## BANK OF MEADVILLE v. NORMA M. HARDY.

### [48 South. 731.]

**RECEIVERS.** *Appointment. Pending cause. Judicial record. Contradiction by parol. Evidence. Chancery practice.*

While a receiver can be appointed only in a pending suit, it is not permissible in the absence of fraud to contradict the record of his appointment by testimony showing that it was made before the suit was begun.

FROM the chancery court of Franklin county.

HON. J. S. HICKS, Chancellor.

Mrs. Hardy, appellee, was complainant in the court below; the Bank of Meadville and others, appellants, were defendants there. From a final decree in complainant's favor the defendants appealed to the supreme court specifically assigning, among other things that their application to vacate the appointment of a receiver was wrongfully denied.

The opinion of the court states the facts.

*H. Cassedy,* for appellants.

The question here for decision is ,whether or not there was a suit pending in the court below when the learned chancellor of that court appointed the receiver. It is appellants' contention that there was no suit pending. At what time was the appointment of the receiver made? The answer is, when the chancellor rendered his decision, that is, when his mind acted upon the matter placed before him. The appointment of a receiver does not consist in "filing" the written order of the chancellor with the clerk of the court. The "appointment," within the contemplation of the law, is when the chancellor or judge has made and expressed his decision to such effect. The appointment is a mental act; it is the judgment or opinion of the court, and may be reduced to writing, and when reduced

to writing, the writing is the mere evidence of the mental act of the judge. 1 Black on Judgments, (1st ed.), § 106.

A decree must be rendered before it can be reduced to writing, whether it be interlocutory or final. The order or decree or judgment of the chancellor appointing a receiver must pass through the mental stage, unless the chancellor be an automaton.

But if the above contention be incorrect, appellants yet contend that the appointment of the receiver was void for the reason that no writ of summons had been issued when the order appointing the receiver was signed by the chancellor. Up to the time of issuance of summons to be served upon the necessary parties, the suit was not "pending." "It is well settled that a *lis pendens* begins from service of the subpoena and not from the time of the filing of the bill or issuance of the subpoena." *Burns v. Mandeville,* 26 Miss. 397. See also *Lambkin v. Nye,* 43 Miss. 241; *Allen v. Poole,* 54 Miss. 323, 333.

To authorize the appointment of a receiver there must have been a suit pending. *Hardy v. McClenan,* 53 Miss. 511; *Barber v. Manier,* 71 Miss. 726, 15 South. 890; *Smith v. Valley Dry Goods Co.,* 79 Miss. 266, 30 South. 653.

The case made by the bill and answer did not warrant the retention of the receiver, hence on its merits the decree should be reversed.

*Stone Deavours* and *Bennett & Torrey,* for appellee.

If the allegations of the bill be considered, it was eminently proper that the learend chancellor of the court below should have appointed the receiver. The record discloses that the order appointing the receiver was not rendered until the day after the filing of the bill praying for such appointment. In the absence of fraud apparent of record (and there is no contention that the procurement of the order for a receiver was fraudulent), this court will not consider the order illegal. *Jones v. Williams,* 62 Miss. 183.

That a receivership was imminently necessary is apparent

from the allegations of the answer showing that the bank, at the time when the receiver was appointed, was preparing to make an assignment for the benefit of creditors. If such general assignment had been executed, then by statute law, Code 1906, § 120, the assignee would have become a receiver of the court, and the affairs of the bank would have been administered in the chancery court in precisely the same manner in which they are now, under the control of the receiver, being administered. Opposing counsel cannot point out any difference between the result of administration by a receiver and administration by an assignee. The result to all parties concerned would have been the same.

It is apparent that the learned chancellor read the order for the receiver's appointment after it had been drawn up, and that he signed the minutes of the court after the order had been recorded. Can a record, made under the jurisdiction of the chancellor, be in any way subsequently contradicted or controverted? We think that the case of *Jones v. Williams, supra,* settles the question in the negative.

The many cases cited by learned counsel for appellant are not in point. It is true that there must be a case pending in court before a receiver can be appointed in a matter such as is here of record. But, as we have above stated, the receiver was not appointed until after the original bill had been filed.

FLETCHER, J., delivered the opinion of the court.

On or about February 15, 1908, the Bank of Meadville, a corporation, found itself in a failing condition, due partly to the general financial condition of the country and partly to mismanagement on the part of its cashier. Indeed, it is contended by appellants that the cashier was guilty of criminal peculations. However that may be, at a stockholders' meeting held on February 15th it was determined, among other things, that the bank should make a general assignment, since it was deemed impossible that it could be continued as a going con-

cern. Thereupon Mrs. Norma M. Hardy, who owned certain shares of stock, prepared a bill alleging that she was a stockholder; that at the stockholders' meeting held on February 15th fifty shares of stock, owned as it was claimed by a rival incorporated bank in violation of law, were voted; that the president of the bank had been permitted to withdraw certain collateral, to the injury of general creditors and stockholders; and that a scheme had been devised to reorganize the bank in such a way as to destroy the value of complainant's stock holdings. There were other allegations not now necessary to set out fully. The prayer of the bill was for a receiver, for an injunction against the reorganization scheme, for a cancellation of the stock alleged to be held illegally by the rival bank, for the return of the collaterals alleged to have been improperly withdrawn by the president, and for general relief. This bill was filed at 11:15 o'clock p. m. on February 16th. At 6 o'clock on the morning of February 17th there was filed in the office of the chancery clerk of Franklin county an order, signed by the chancellor, reciting that the foregoing bill of complaint had been presented to him, that it appeared to the court that said bill had already been filed and that the cause made thereby was a pending one, and that an emergency existed which justified the appointment of a receiver without notice. The order appointed a receiver and approved the bond. This order appointing a receiver was dated February 17th. Upon the filing of the decree, the receiver took charge of the assets and property of the bank, and has, for more than a year, been engaged in the discharge of the duties of his office. The defendants to the bill answered, and filed an application to vacate the receivership. From an order overruling the motion to vacate the receivership, the bank of Meadville and its codefendants prosecute this appeal.

Upon the hearing of this application the chancellor made the following statement: "On the 16th day of February, 1908, Truly, an attorney, presented to him (the chancellor) the

bill of complaint, then unsworn to, and the chancellor and Truly discussed the bill of complaint, as to whether upon its face it was sufficient in its allegations to justify the court in appointing a receiver without notice, and the chancellor expressed himself that it was sufficient, but that he would not appoint a receiver until a bill should be filed. This conference was held about 12 o'clock on Sunday, February 16th. Afterwards Truly and Deavours, solicitors for appellees, met the chancellor, about 7 o'clock p. m. and stated that the bill of complaint had been sent to Meadville to be filed, and presented a draft of the decree, and the bond of the receiver to be appointed, and the bond of the complainant. The chancellor at that time, at 7 o'clock p. m. on the 16th day of February, signed the decree, with the direction that it was not to be filed until after the bill had been filed in the clerk's office in Meadville. It was suggested that the chancellor keep the draft of the decree, and that, when word had been received that the bill of complaint had been filed, the chancellor would then sign the decree, but the chancellor stated that he did not desire to be awakened late at night, and so signed the decree then at 7 o'clock p. m., the 16th, and delivered it to Truly, an attorney and officer of the court, to be filed after the filing of the bill of complaint which directions were complied with, as shown by the record."

It is insisted that the appointment of a receiver was void, since it appears from the above statement of the chancellor that the order appointing the receiver was in fact signed before the bill was filled and before any cause was in fact pending. Therefore appellants invoke the authority of *Hardy v. McClellan,* 53 Miss. 511, *Barber v. Manier,* 71 Miss. 726, 15 South. 890, and *Smith v. Valley Dry Goods Co.,* 79 Miss. 276, 30 South. 653. These cases unquestionably hold, what is universally accepted as the law, that there must be a case pending in court before a receiver is appointed, and that an appointment in advace of the filing of the bill is void. The point before us

must be considered in the light of the recitals of the order appointing the receiver. Upon its face it shows that the receiver was not appointed until after the bill had been filed, and that in fact there was a cause pending when the appointment was made. It further appears from the order that it was signed on the day after the bill was filed. This order, being duly filed and entered, becomes a judicial record in the cause, which is now sought to be contradicted and overthrown by parol. In this view of the matter, we are face to face with the familiar principle that a judicial record imports absolute verity, and cannot be impeached or contradicted, except for fraud. As a matter of fact, there is no suggestion of fraud in the case under consideration, and no hint thereof in the application to vacate the receivership. So that we have the case of a decree regular on its face, and, if taken as true, rendered in a pending cause after statement of the chancellor contradicting its recitals. We are of the opinion that the valility of the decree cannot be attacked in the statement of the chancellor in determining the question of jurisdiction or the validity of the order. It was held in *Jones, Receiver, v. Williams,* 62 Miss. 183, that the minutes of the circuit court, when signed by the judge, could not be contradicted as to the real date of the adjournment of the court by the affidavit of the judge himself and members of the bar as to when th court id in truth adjourn. It is there said: "Judicial records, required by law to be kept, are said to import unerring verity, and to be conclusive evidence against all the world as to their existence, date, and legal consequences." So in *Childress v. Carley,* 92 Miss. 571, 46 South. 164, it was held that no evidence would be received or considered tending to show that a judgment entry was in fact not made until after the minutes had been signed and the court had adjourned. This case goes fully into the question, and reaffirms with approval the doctrine of *Jones v. Williams, supra.*

The case under consideration falls squarely within the principles of these two cases. The statement of the chancellor is

directed specifically to the point that, while the decree appointing the receiver bears date of February 17, it was in fact made on the 16th. We have seen that under the authorities cited, in the absence of any fraud, we must look to the record, and to the record alone, for proof of the true date of its execution. The distinction must be kept in mind between an effort to show the error in the court's finding of facts as expressed in the decree and the effort to prove that a decree bearing one date was in fact executed on another date. It may be plausible, and perhaps correctly, argued that parol evidence, or record evidence other than the decree itself, may be received to show that the decree or other erroneously recites that the bill has been filed and that the cause was pending. But, given the right to so contradict the decree, there still remians the impossibility of contradicting the recorded decree as to the date of its rendition. And when we accept as final and indisputable the recital to the effect that the decree was entered on February 17, coupled with the record proof that the bill was filed on the 16th, we must conclusively presume that the receiver was appointed in a pending cause, and that the appointment was not unauthorized.

We attach no importance to the fact that the chancellor, on the hearing of the application to vacate the receivership, made the statement above set out without abjection from either litigant. We are not here concerned so much with questions of procedure and practice as we are with the fundamental postulate that the absolute verity which a judicial record imports cannot be in any wise assailed, except by a showing as to fraud. This court must look to the evidence now before it, and, as we have seen, it is bound by the face of the record, and must disregard wholly the statement of the chancellor, regardless of the circustances under which it was made. The unimpeachable verity of the decree controls the action of this court, precisely as it must have controlled the action of the court below. We conclude, therefore, that there is no merit in the contention that the receivership should have been vacated on account of the

statement of the chancellor as to the manner and time of the receiver's appointment.

It is earnestly insisted that the decree should be reversed on the merits; that is to say, that the case made by the bill and answer did not warrant the retention of the receiver. We observe, in response to this contention, that the appointment and retention o fa receiver rest largely within the discretion of the chancellor. The allegations of the bill and the admissions of the answer convince us that the bank was in a failing condition, and that both parties to the controversy were desirous of having its affairs administered by the chancery court. The only difference was ats o method; the one faction contending for an assignee, and the other for a receiver. The result is practically the same, since both can act only under the specific direction of the ourt. This being the conceded status of the matter, we cannot see how appellants' rights can possibly suffer b ythe retention of a receiver, or what just cause can exist for displacing him. We must decline, in this state of the case, to interfere with the exercise of the chancellor's discretion.

*Affirmed.*

WHITFIELD, C. J., delivered the following specially concurring opinion:

I concur in the result reached in this case, and in the opinion in all respects save one, and that is this: I do not think that the case of *Childress v. Carley,* 92 Miss. 571, 46 South. 164, has any application whatever to the facts of this case, and I adhere fully to my dissenting opinion in that case as the sound view of the law, on the facts of that case. In this case now before us,. the chancellor did read the application for a receiver, and did sign it, and did sign the minutes of the court in reference to it. In other words, the chancellor read the order after it was drawn up, and the minutes of the court relating thereto, and signed both; and the effort here is to contradict a record concededly made by the chancellor himself. In the *Childress-Carley case*

the circuit judge never saw the pretended minutes, never had them drawn up, never read them and never signed them. The effort in that case was not to contradict a record, but to show that the pretended record never had any existence. The effort here, in this case, is to contradict, by parol testimony, the recitations in an admitted record. This case, in my judgment, is controlled on this point by the case of *Jones v. Williams,* 62 Miss. 183.