[Civ. No. 545.    Third Appellate District.—July 5, 1910.]

## GERALD S. WHITLEY and M. FISHER, Respondents, v. ALEXANDER BRADLEY, Appellant.

ACTION FOR ACCOUNTING AND DISSOLUTION OF PARTNERSHIP — APPOINTMENT OF RECEIVER—DISCRETION—REVIEW UPON APPEAL.—The power to appoint a receiver in an action for an accounting and dissolution of an alleged partnership is one of sound judicial discretion; and unless it can be said that there appears from the record here a clear abuse of such discretion in the action of the court below in making the order appealed from, the same must stand.

ID.—EQUITABLE RELIEF BY RECEIVER WHEN INVOKED.—Equitable relief by way of the appointment of a receiver will be invoked only when the exigencies of the case clearly appear to absolutely require it for the conservation of the rights of all the parties concerned in the litigation giving rise to the application for such relief.

ID.—EXTRAORDINARY REMEDY—SHOWING REQUIRED FOR APPOINTMENT.— The appointment of a receiver is justly regarded as an extraordinary or harsh remedy; and a court of equity will never exercise its discretion favorably to a motion invoking the aid of this remedy, except upon a clear showing that such relief is necessary in order to preserve and fully protect the rights of all parties.

ID.—PROBABLE RIGHT IN PROPERTY—DANGER OF LOSS.—It must be made to appear that the person seeking the appointment of a receiver has at least a probable right or interest in the property or fund involved in the litigation, and that there is danger of its being lost or destroyed or misappropriated, unless a receiver be appointed *pendente lite*.

ID.—FINDING UPON CONFLICTING TESTIMONY—ABUSE OF DISCRETION NOT SHOWN.—Where, upon conflicting testimony, the right or interest and the danger of the destruction or misappropriation of the property or fund is found to exist, a reviewing court, as a general rule, is in no position to say that the *nisi prius* court has abused its discretion in the appointment of a receiver.

ID.—FORMATION OF PARTNERSHIP PRIOR TO INCORPORATION — PARTNERSHIP BUSINESS NOT TRANSFERRED TO CORPORATION—RECEIVER NOT DISTURBED.—Though the parties forming a partnership contemplated the formation of a corporation which was in fact formed, but it appears that the partnership business never was transferred to the corporation, it does not affirmatively appear, on account of the mere formation of such corporation, that the court abused its discretion in the appointment of a receiver of the partnership business. It is sufficient that there is some showing that it was the original intention and agreement of the parties to form a partnership, and that they actually formed and carried on the business through that instrumentality, and that the showing is of such a character as to make it impossible for this court to reverse the order appealed from without an unwarranted interference with the discretion vested in the trial court.

ID.—LEASE TAKEN IN NAME OF PARTNERSHIP—VALUABLE ASSET.—Where a lease was taken in the name of the partnership for the purpose of carrying on its business, such lease is a valuable asset of the business.

ID.—PARTNERS NOT PUTTING MONEY INTO BUSINESS—EVIDENTIARY FACT —FINDING.—The fact that plaintiffs, as members of the partnership, did not put money into the business, does not change the situation as to the fact of partnership. It is a mere evidentiary consideration which cannot overthrow the finding as to the existence of the partnership.

ID.—JOINT OWNERSHIP OF PROPERTY IN PARTNERSHIP NOT ESSENTIAL TO PARTNERSHIP.—To constitute a partnership it is not essential that there should be property forming the capital jointly owned by the partners; nor does it follow that because one partner may not put

up his share of the capital under an agreement to form a partnership, the combination so formed is any less a partnership.

ID.—PARTNERSHIP AGREEMENT—EQUAL SHARES IN PROFITS—SHARE IN LOSSES IMPLIED.—Where the express agreement was that the partners should at all times share equally in the profits of the business, it is implied, in the absence of a stipulation to the contrary, that they should also share equally the burden of its losses.

ID.—TRANSFER OF STOCK IN CORPORATION—UNEQUAL SHARES—PARTNERSHIP ASSETS NOT INURING TO CORPORATION.—Where it appears that no part of the business or assets of the corporation was in fact transferred to the corporation, it cannot be claimed that the partnership assets inured equitably to the corporation, where the stock was not equally distributed pursuant to the partnership agreement, but defendant, in violation thereof, demanded and had issued to himself more than one-half of the capital stock, instead of one-third thereof, under the partnership agreement for equal shares.

ID.—TRANSFER OF STOCK NOT CONVEYING PARTNERSHIP PROPERTY.—The transfer of stock by one of the partners to another cannot make the former any the less a partner in the property and business which were not transferred to the corporation, and could not inure to its benefit on account of unequal shares issued therein.

APPEAL from an order of the Superior Court of the City and County of San Francisco, appointing a receiver *pendente lite.* James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Louis Boardman, for Appellant.

Richard C. Harrison, and R. V. Whiting, for Respondents.

HART, J.—This is an appeal from an order appointing a receiver, *pendente lite.*

The complaint alleges that "on or about the fourth day of January, 1907, at the city of San Francisco, state of California, said plaintiffs and said defendant entered into an agreement wherein and whereby said parties agreed to form a copartnership for the purpose of carrying on the business of manufacturing and selling cement wash-trays and doing a general cement construction business—said business to be conducted under the firm name of 'California Cement Tray Company,' and it was then and there agreed that each of said parties should furnish one-third of the necessary capital to

carry on said business and each of said parties should receive one-third of the profits of said business and be liable for one-third of the debts of the same''; that said parties ever since entering into said agreement have conducted said business in pursuance of the terms of said agreement; that said copartnership has acquired and "now owns" valuable property, consisting of a lease of land situated in the city of San Francisco and other property of different kinds of the approximate aggregate value of $18,850; that "said copartnership is largely indebted." It is further alleged that "on or about the twenty-first day of May, 1907, said defendant denied the existence of said copartnership, denied that said plaintiffs had any interest in said business, and then excluded, and ever since has continued to exclude, said plaintiffs from any participation in said business, and ever since the last-mentioned date has taken sole charge of said business, and has retained the whole proceeds thereof and income therefrom''; that since said twenty-first day of May, 1907, said defendant has not kept up the manufacture of trays, so far as quantity is concerned, as theretofore, but has manufactured not more than one-fifth of the number of trays which had prior to that date been manufactured, and "has been, and is selling the trays on hand at prices unreasonably low, and turning the assets of said copartnership into cash and applying the proceeds thereof to his own use, and unless restrained by an order of this honorable court, will continue to do so." It is additionally averred that "it is necessary that a receiver be appointed to take possession of the assets of said copartnership and manage the said business for the benefit of the said partners and of the creditors of said copartnership."

An accounting of the business and the affairs of the alleged copartnership and a dissolution thereof constitute the ultimate relief demanded, and that in the meantime a receiver be appointed to take charge of the business and the defendant enjoined from "selling, encumbering or otherwise disposing of said property or any part thereof until the further order of" the court.

The answer specifically denies each and every material allegation of the complaint, and, by way of an affirmative defense, alleges that the defendant had for many years prior to the fourth day of January, 1907, been engaged in the manu-

facture of cement trays in the city of San Francisco; that on said date he made an agreement with the M. Fisher Company, a corporation, by which the latter was to construct the buildings "now situate on the premises described in plaintiffs' complaint herein"; that shortly thereafter, "the plaintiffs herein proposed the formation of a corporation to be known as 'The California Cement Tray Company,' to conduct said business, in which they should hold two-thirds of the capital stock thereof, and which should have the property described in plaintiffs' said complaint and conduct the business mentioned therein"; that, accordingly, said corporation was subsequently organized and "went into the possession of all the property described in plaintiffs' complaint, and has since remained in the possession of the same, and that the business mentioned in said plaintiffs' complaint has since been in the possession of and conducted in the name of said corporation; that all said property and said business is now in the possession of and being conducted by and in the name of said corporation." Defendant further alleges that plaintiff Fisher on the seventh day of May, 1907, "for a valuable consideration," assigned, transferred and delivered to defendant all the capital stock held by him in said corporation, and after such transfer said plaintiff had no other stock or further interest whatever in said corporation; that plaintiff Whitley "has not contributed or paid any money whatever toward the capital stock of said corporation, and has not paid any money whatever for the construction of the said improvements on the premises described in plaintiffs' complaint, and has not contributed or paid any money whatever in or about the manufacture or purchase of the personal property described in said complaint"; that he has not paid or contributed any money whatever as capital of the alleged copartnership, and that said Whitley has no interest in or ownership of the said property described in the complaint "as a copartner therein or otherwise."

The application for the appointment of a receiver was heard on the twentieth day of June, 1907, at which time evidence, oral and documentary, was introduced both in support of and against the allowance of said application.

The power to appoint a receiver is one of sound judicial discretion, and unless we can say that there appears from the

record here a clear abuse of such discretion in the action of
the court below in making the order appealed from, the same
must stand.

Equitable relief by way of the appointment of a receiver
will be invoked only where the exigencies of the case clearly
appear to absolutely require it for the conservation of the
rights of all the parties concerned in the litigation giving rise
to the application for such relief. The appointment of a re-
ceiver is justly regarded as an extraordinary or harsh remedy,
and a court of equity will never exercise its discretion favor-
ably to a motion invoking the aid of this remedy except upon
a satisfactory showing that such relief is necessary in order
to preserve and fully protect the rights of all the parties.
*(Mead et al.* v. *Burk et al.,* 156 Ind. 577, [60 N. E. 338].)
It must, of course, be made to appear that the person seeking
such relief has at least a *probable* right or interest in the prop-
erty or fund involved in the litigation, and that there is
danger of its being lost or destroyed or misappropriated unless
a receiver be appointed *pendente lite;* and where, upon con-
flicting testimony, such right or interest and danger of the
destruction or misappropriation of the property or fund are
found to exist, a reviewing court is, as a general rule, in no
position to say that a *nisi prius* court has abused its discretion
in the appointment of a receiver. (High on Receivers, 3d
ed., sec. 11; *Mead et al.* v. *Burk et al.,* 156 Ind. 577, [60 N. E.
338]; *Copper Hill Min. Co.* v. *Spencer,* 25 Cal. 16; *Gillett* v.
*Higgins,* 142 Ala. 444, [38 South. 664]; *Brown* v. *Vander-
meulen,* 41 Mich. 418, [49 N. W. 920]; *Bank etc.* v. *Hardy*
(Miss.), 48 South. 731; *Dawson* v. *Parsons,* 137 N. Y. 605,
[33 N. E. 482]; *Lyle* v. *Commercial Bank,* 93 Va. 487, [25
S. E. 547]; *Nash* v. *Meggett,* 89 Wis. 486, [61 N. W. 283];
*Naylor* v. *Sidener,* 106 Ind. 179, [6 N. E. 345]; *Cone* v. *Paute,*
12 Heisk. 506; *Cameron* v. *Groveland Imp. Co.,* 20 Wash. 169,
[72 Am. St. Rep. 26, 54 Pac. 1128].)

The determination of the question here must, therefore, of
necessity rest upon the proposition whether the evidence upon
which the order appealed from was made affirmatively dis-
closes an abuse of discretion.

The contention of the appellant is that the evidence received
at the hearing of the motion is insufficient to show that there
ever was an agreement to organize a partnership, much less

the organization of one, between the parties to this suit; that, on the contrary, it was understood and agreed among the parties that they would form a corporation, as alleged in the answer, for the purpose of manufacturing cement trays; that the property mentioned in the complaint was acquired for the benefit of such corporation; that, in accordance with this understanding, a corporation was formed. It is further contended by appellant that the lease mentioned and claimed as partnership property is shown to have been transferred to the corporation; that the plaintiff Fisher, the evidence shows, sold and transferred whatever stock he owned in the corporation to the defendant, and that, according to the testimony, plaintiff Whitley never at any time contributed any money toward or for the benefit of either the alleged partnership or the corporation.

The claim of respondents is, as the allegations of the complaint in part show, that the original agreement between the parties was to form a copartnership, to thereafter incorporate and then to transfer the business and property of said partnership to the corporation so formed; that the property was owned and the business conducted by them as copartners, and that said property and said business have never been transferred to the corporation formed subsequently to the formation of the partnership.

We cannot say that it affirmatively appears from the record that the court was not justified in appointing a receiver, or, in other words, that the court thus abused its discretion.

Both Whitley and Fisher testified that in the early part of January, 1907, they and the defendant entered into an agreement to form a partnership for the purpose of carrying on the business of manufacturing and selling cement trays. Fisher testified that at the time now spoken of Bradley was not engaged in business. "Prior to the fire," continued Fisher (referring to the fire of 1906), "he had been in the cement wash-tray business, but not since the fire. He claimed that he had promised Mr. Whitley that at any time he [Bradley] should go into the tray business he would have him act as partner, and I acquiesced in that and said I would go into partnership with them under those conditions." The plaintiffs and defendant agreed that Bradley and Whitley should manage the business, for which each was to receive a salary.

The property upon which the building to be used for carrying on the business was erected was leased by the parties in the names of Bradley and Whitley. It was agreed that after the business was started a corporation should be organized for the purpose of conducting the business. Neither Whitley nor Fisher actually contributed any money toward establishing the business, but both testified that they were at all times ready and willing to put up their respective shares, but were told by Bradley to wait until the business was incorporated, when they would divide up the stock, the agreement being that the shares in and the profits of the business should be equally divided. Efforts were finally made to incorporate and a lawyer consulted with that view; but Bradley demanded fifty-one per cent of the stock "and," testified Fisher, "that broke this thing all to pieces, and Mr. Whitley and myself not agreeing to that, we couldn't come to any conclusion at all."

Whitley, as stated, corroborated Fisher in all important particulars as to the agreement between the parties. The parties were to be equal partners, he said, and share equally in the profits—that is, each was to have a one-third interest in the business and each to receive one-third of the profits. Whitley negotiated for the lease of the property upon which the building was erected, and he and Bradley were each to receive a monthly salary, while Fisher, not actively engaged in the management of the concern, was to receive his share of the profits only. "Before the building was completed," proceeded Whitley, "we were making trays. We carried on the business of manufacturing cement trays under the name of the 'California Cement Tray Company.' I took care of the books and handled the outside business and solicited business. Mr. Bradley took charge of the making of the trays and selling them. Mr. Fisher was the silent man, and had a great deal of prestige, and is connected with Levy Brothers, who buy more material than anybody else in San Francisco." Referring to the fact that he had not put any money into the business, Whitley testified: "I had several conversations with Mr. Bradley about my putting up money. He always put it off. There was always some excuse, and we couldn't come to any agreement. I told him my money was lying in the bank any time he wanted it. . . . There was no arrangement or understanding had between me, Bradley and Fisher as to the amount

of money that any of us should put into the business, but I told Mr. Bradley my money was ready to be paid at any time. Mr. Bradley refused to take money on account. He said that he wanted all the bills to come in, and wanted the building and the plant to be put in operation, and that then we would divide up the business share and share alike, and repay him for the money that he had withdrawn from the bank with interest.''

The attorney consulted by the parties with regard to the formation of a corporation prepared the papers for that purpose, and also prepared a draft of the minutes of what should take place at the preliminary meeting of the directors. McGrath, the secretary of the board of directors, testified that there was a meeting of the stockholders held on February 9, 1907, and that the business then transacted was the election of the directors of the corporation, after which, and on the same day, said directors held a meeting, at which the only business transacted was the adoption of a code of by-laws. He further testified that there were no other meetings of the directors after the ninth day of February, and that what purported in the ''minute-book'' of the corporation to have been an offer on the part of Bradley, Whitley and Fisher to transfer and assign to the corporation the business of cement tray-making and the property used in connection therewith, and an acceptance of said offer by the corporation through the directors, never took place. The attorney referred to corroborated these statements, saying, as before intimated, that that part of the ''minute-book'' referred to was prepared by him not for the purpose of representing the fact of the transfer or the offer to do so and acceptance thereof, which had then not occurred, but merely as an exemplar to be followed for the proper preservation in the ''minute-book'' of the record of the transaction as so carried out, in the event that at any future time such transaction should take place.

Whitley also testified that the business and property of the partnership had never been transferred to the corporation.

It may be conceded that there is not an overwhelming amount of testimony in the record showing that the parties first formed themselves into a copartnership for the carrying on of the business referred to in the pleadings and the evidence; but there is some showing that such was the original

arrangement and intention of the parties, and that they actually formed a partnership and carried on the business, for a time at least, through that instrumentality; and this showing is of a character to make it impossible for this court to reverse the order appealed from without an unwarranted interference with the discretion vested in trial courts in such matters.

The lease was taken in the names of Bradley and Whitley, and, so far as the record shows to the contrary, is still in their names. This, of itself, is a valuable asset. The property and the business were never transferred to the corporation, and the latter, although properly existing, it may be admitted, and brought into existence for the purpose of acquiring the property and business of the partnership and conducting the same, has never acquired the property and the business or either, and as such property and business must be owned by someone, ownership thereof has necessarily remained, and still remains, so far as we are advised by the record before us, in the partnership.

The fact that neither Whitley nor Fisher has put any money into the business cannot change the situation in the least. This circumstance, as an evidentiary fact, tending, it may be, to negative the proposition of a partnership, was worthy only of such weight as the court deemed it entitled to, and, no doubt, was given proper consideration by the judge in determining whether there existed a partnership between the parties under the agreement, but it by no means follows that, because one partner may not put up his share of the capital under an agreement to form a partnership, the combination so formed is any the less a partnership.

The case of *Brooke* v. *Tucker,* 149 Ala. 96, [43 South. 141], is in many respects almost identical with the case at bar. There a partnership was formed with an understanding between the parties thereto that later on there would be organized by the partners a corporation, to which said business would be transferred and through the agency of which the same would thereafter be carried on. We quote from the opinion in that case: "Whether complainant and Brooke are partners *inter sese* must be determined by their intention as the same is expressed in or may be gathered from the written agreement entered into by them. By the contract it is made

to appear that complainant and Brooke associated themselves together for the publication of a newspaper. It also appears that, at the time the contract was made, Brooke was the sole owner of the newspaper plant, and it may be conceded that by the terms of the contract he was to remain the owner and possessor of the legal title, and in control, until the formation of the contemplated corporation provided for by the contract; yet this of itself would not prevent the contract from being one of partnership. To constitute a partnership it is not necessary that there should be property forming its capital jointly owned by the partners. The property employed in the partnership business may be separate property of the partners; but if they share in the profits and losses arising from its use, a partnership exists. (Citing *McCrary* v. *Slaughter,* 58 Ala. 230, 234.) . . . While nothing is said specifically about the losses, or that complainant is to share in them, yet, construing all the terms of the contract together, it is our opinion that there is created a community of profits and loss, or, as it is expressed in one of our cases, 'a communion of profits and loss is created,' '' citing a number of cases. The foregoing expressions harmonize with our code definition of a partnership. (Civ. Code, secs. 2395, 2404.)

The agreement here was that the parties should at all times participate in the profits in equal shares, and that they should equally bear the burden of the losses is implied from such agreement, there appearing no stipulation to the contrary. (Civ. Code, sec. 2404, *supra.*)

There can be no doubt that the ultimate purpose or intent of the parties was to form a corporation by and through the agency of which the business in which they had engaged was thereafter to be transacted. But there is evidence that they started to do business before a corporation was formed or before steps were taken to form one, and it was shown that they sustained some sort of relations with each other before the organization of the corporation. We think it clearly enough appears that the intention was to establish and fix as their status toward each other during their association together prior to the time at which the corporation was to be organized that of a copartnership.

Nor does the fact that Fisher transferred to Bradley stock purporting to have been issued to him in the corporation make

him any the less a partner in said property and business, since the said property and business were never transferred to said corporation. Obviously, no one can sell property and convey a valid title thereto which he does not own and to which he has no title. Even if it might be contended that, under the agreement to form a corporation at a certain time, pending which time the business and property acquired for the purposes of such a corporation were to be conducted by and owned as a partnership, the copartners would become trustees of the corporation as to such business and property upon the formation of such corporation, and that the latter upon its formation would have an equitable title to such business and property, such contention could not be successful here, since it appears from the evidence that the terms upon which the corporation here was to be formed were not kept by the defendant, who demanded, instead of one-third of the capital stock to which he was alone entitled, according to the agreement, fifty-one per cent thereof.

It is very clear that the stock issued to Fisher by the corporation could not affect the property involved here, and that Fisher's sale of said stock to Bradley conveyed nothing, so far as the property and the business of the partnership were concerned.

The cases cited by counsel for appellant to the effect that property acquired for the purposes of a corporation to be subsequently organized, *ipso facto* inures, with all its rights and advantages, to such corporation upon its formation, and that, therefore, a formal transfer of the property so acquired to said corporation is not necessary, do not fit the facts of this case as found by the court, and as are sufficiently shown by the evidence, and are, therefore, not in point here.

The order is affirmed.

Chipman, P. J., and Burnett, J., concurred.