VÍCTOR M. RAMÍREZ, Petitioner, v. DISTRICT COURT OF MAYAGÜEZ, Respondent

No. 1576. Argued November 9, 1944.—Decided February 13, 1945.

*Géigel & Silva* and *José López Baralt* for petitioner. *Rodolfo Ramírez Pabón, pro se,* appearing specially in the case. *Vicente Palés Matos* for intervener, plaintiff in the main action.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This is a petition for certiorari to review an order of the District Court of Mayagüez wherein before entering judgment it decreed the receivership of two partnerships within a suit brought on November 2, 1943, by an alleged partner who sought the liquidation of both firms and the delivery of his share. Plaintiff Arcadio Ramírez Cuerda alleged that he constituted both regular partnerships, one with defendant Víctor M. Ramírez, petitioner herein, under the firm name of R. & R. Laboratories and another one with the same Víctor M. Ramírez and Daniel Ramírez under the firm name of Distilleries V. M. Ramírez & Co.;[1] that the plaintiff contributed $1,500 in cash to the first partnership and $3,900 to the second, and Víctor M. Ramírez contributed the equipment to be used in both partnerships; that the first partnership was engaged in the manufacture of alcoholic beverages and of other products for sale in Puerto Rico and in the United States, and the second was also engaged in the manufacture and sale of alcoholic beverages and in the purchase and resale of alcohol; and that both partnerships were constituted without limit of time. He further alleged that in the partnership R. & R. Laboratories the plaintiff and Víctor M. Ramírez would share equally in the profits, and in the Distilleries V. M. Ramírez & Co. the profits would be equally divided among the three partners; that on October 30, 1943, he notified his partner Víctor M. Ramírez, and asked

---

[1] The date on which the partnerships were constituted does not appear from the complaint, but from plaintiff's testimony it appears that they were verbally constituted on June 1942.

Notwithstanding the provisions of § 98 of the Code of Commerce, the execution of the public deed as well as its recordation in the mercantile registry are not essential requisites for the existence of the contract nor does it affect the contracting parties, since they are legal formalities which tend to protect the rights of third persons. This is the sound and true theory, as stated by Gay de Montellá in his *Código de Comercio,* vol. II, p. 70.

him to immediately notify the other partner Daniel Ramírez, who lived in California, that he was retiring from both partnerships and requested the liquidation of the profits; that defendant Víctor M. Ramírez refused for himself and in representation of the other partner to carry out the liquidation sought and continued acting as if he were the only member of the partnerships without permitting plaintiff to interfere. Lastly, he alleged on information and belief that both partnerships had a total capital of not less than $60,000, and prayed for judgment decreeing the liquidation of the partnerships and the delivery of the share due him.

On the same day that the complaint was filed, plaintiff sought and obtained an order to secure the effectiveness of the judgment after furnishing bond for $10,000,[2] by virtue of which an attachment was levied on funds deposited in various banks in Mayagüez for the total amount of $44,812.52, some in the name of the partnerships and others in the name of Víctor M. Ramírez. Documents including formulas, bills, checks, and accounting books, were likewise attached, all of which were seized by the marshal and deposited in the district court under his custody. By stipulation of the parties, on November 10, 1943, the court modified the order to secure the judgment, by reducing the amount attached to $22,406.26, thereby dissolving the attachment on the balance.[3]

---

[2] On May 10, 1944, at the request of the plaintiff and over the objection of defendant Víctor M. Ramírez, the court reduced the bond to $6,000.

[3] By an order of February 4, 1944, the lower court with the consent of the plaintiff, dissolved the attachment on the certified check issued on October 7, 1943, by Occhiato Mercantile Corporation to the order of Distilleries V. M. Ramírez & Co. for the amount of $9,750, and on a money order against New York for the amount of $3,250, issued on September 24, 1943, by Víctor M. Ramírez in favor of Albert Pick. Likewise it ordered the marshal to deliver to Víctor M. Ramírez the federal license issued in favor of Distilleries V. M. Ramírez & Co. for the operation of the factory for liquors which had been attached together with the check and the money order above mentioned. On February 16, 1944, it also ordered with the consent of the plaintiff, that two licenses for the rectification of liquors be delivered to defendant Víctor M. Ramírez, allowing the plaintiff to make a copy of the licenses before taking them out of court.

'After several extensions, on January 10, 1944, defendant Víctor M. Ramírez filed his answer wherein he substantially denied having any partnership with the plaintiff, that the latter had given him notice of his intention to withdraw from the firms, or that he had sought the liquidation of the profits thereof.

Notwithstanding the levy of the attachment, the plaintiff, on May 15, 1944, filed a petition praying that the partnerships be placed in receivership. The petition was grounded on the fact that defendant Víctor M. Ramírez, by himself and in representation of the other partner Daniel Ramírez, refused to carry out the liquidation sought by the plaintiff; that defendant Víctor M. Ramírez continued to execute contracts and operations in the name of Distilleries V. M. Ramírez & Co. without consulting with, or rendering any account to, the plaintiff; that the latter had no means to supervise the business which was being carried out or to prevent the improper management of the properties of the Distilleries V. M. Ramírez & Co.; and that the most adequate remedy for the protection of the interests of the parties was by way of the appointment of a receiver, since plaintiff feared that defendant Víctor M. Ramírez would misappropriate the profits obtained in the business carried out by Distilleries V. M. Ramírez & Co. and R. & R. Laboratories. In the petition he prayed for the appointment of a receiver authorized to seize the properties of the partnerships, make new contracts, or continue those already executed.

The hearing of the petition was set for May 26, 1944, there having been filed by defendant Víctor M. Ramírez on the date preceding the hearing a motion opposing the receivership.

When defendant Víctor M. Ramírez was examined as plaintiff's witness at the hearing, he admitted that he had bought a house in Miami for approximately $17,000 with the proceeds of 1,000 cases of gin belonging to Distilleries V. M.

Ramírez & Co., which had been sold to Albert Pick,[4] and that he had taken from that same firm the amount of $50,000 with which he bought for himself shares in a corporation named Distilleries V. M. Ramírez & Co., all this without plaintiff's consent.

Before the petition for the appointment of a receiver had been decided, the trial of the main action began on July 3, 1944, and continued on the 5th and 6th, all of plaintiff's evidence and the testimony of one of defendant's witnesses being introduced. It was then agreed to continue the trial on January 1945.[5]

---

[4] We do not understand how the acting stenographer of the lower court, Moisés del Toro, who took the stenographic notes of the hearing held on May 26, 1944, could have issued three different certified copies of the stenographic record of the hearing. In the one issued on August 5, 1944, at the request of Messrs. Géigel and Silva, counsel for defendant Víctor M. Ramírez, the following appears:

"Q. Notwithstanding what you have testified, is it not true that you bought that house with the proceeds of 1,000 cases of gin?—A. No, sir.

"Q. And that said gin belonged to the Distilleries V. M. Ramírez?—A. No, sir.

In the one issued on September 1, 1944, at the request of the district judge, the above-copied matter appears thus:

"Q. Notwithstanding what you have testified, is it not true that you bought that house with the proceeds of 1,000 cases of gin?—A. Yes, sir.

"Q. And that said gin belonged to the Distilleries V. M. Ramírez?- A. Yes, sir.

And in the transcript of the evidence certified by the stenographer on October 23, 1944, that same matter appears thus:

"Q. Notwithstanding what you have testified is it not true that you bought the house at Miami with the proceeds of 1,000 cases of gin which were sold to Albert Pick, and that your wife had no interest in those cases? —A. Yes, sir.

"Q. And that said gin belonged to the Distillery V. M. Ramírez?—A. Yes, sir."

Without prejudice to the investigation that the Attorney General might carry out as to the improper conduct of the stenographer, we wish to state that for the purpose of this case it does not disturb the conclusion which we have reached, inasmuch as there exists another transaction consisting in the investment of $50,000 belonging to the partnership Distilleries V. M. Ramírez & Co. in shares of the corporation Distilleries V. M. Ramírez, Inc. in the name of Víctor M. Ramírez.

[5] The attorney for the defendant, petitioner herein, complains that although the court, on July 6, 1944, after all the evidence had been introduced, stated that it would not decide the motion on the appointment of

On July 14, 1944, the court decreed the receivership.[6]
The following paragraph is taken from the order, and it sets
forth the grounds on which the court relied for decreeing
the same:

"It appears from the oral and documentary evidence introduced
by the plaintiff, without it being understood that we are deciding
the case on its merits, that two regular mercantile partnerships were
constituted by plaintiff Arcadio Ramírez Cuerda and defendants
Víctor M. Ramírez and Daniel Ramírez. It is well known that in

a receiver until the evidence for both parties had been heard, it issued the
order before giving the defendant an opportunity to adduce his evidence. In
our opinion, this is a misunderstanding on the part of petitioner's attorney, since
from the record there is no showing of such statement and on the other hand
the judge has presented with the return a sworn motion wherein he states
that he never made such statements. The testimony of the judge was
corroborated by the oral report made to that same effect in this court by plain-
tiff's attorney. Furthermore, the following paragraph taken from the record
tends to show that the motion on the appointment of the receiver was definitely
submitted to the court on July 6, 1944. When plaintiff's witness finished his
testimony and the court announced that the trial could not continue until
January 1945, plaintiff's attorney stated the following:

"Your Honor, I am going to ask you, under these circumstances, to
speed up the order relating to the receiver."

And defendant's attorney stated:

"Does the court wish to hear the parties in connection with the receiver-
ship or in its opinion has it been sufficiently discussed?"

to which the judge answered:

"In our opinion it has been sufficiently discussed."

Immediately thereafter plaintiff's attorney stated:

"Your Honor, I want it to appear on the record: as part of our
evidence in the receivership and in order that Your Honor take it into
consideration when deciding the motion for receivership, we submit the
evidence which was introduced in the case in chief."

Since the evidence in support of the motion on receivership had already been
introduced, defendant himself having been the first one to testify, and as the
court as well as defendant's attorney were of the opinion that the motion had
been sufficiently discussed and plaintiff's attorney asked at that same time that
the order be speeded up, it seems clear that all the parties understood that
the motion had been definitely submitted to the consideration of the court,
especially if it is taken into account that the remedy sought is urgent by its
nature and that the court had stated that it could not hear the evidence of the
defendant until January of the following year.

[6] The receiver Angel Arroyo Rivera took possession of his office on the
next day after furnishing bond. By an order of July 28, 1944, the court set
aside his appointment appointing instead José Rafael Gelí who took possession
on August 23, 1944, after furnishing a bond.

this kind of partnerships the managing partners (and it was in this capacity that plaintiff Arcadio Ramírez Cuerda seems to have been acting in R. & R. Laboratories and in Distilleries V. M. Ramírez & Co.) are liable with all their properties for the debts of the partnership even after the latter goes out of existence (15 P.R.R. 606; 24 P.R.R. 87; 28 P.R.R. 561, etc.). This leads us to the inescapable fact that if partner Víctor M. Ramírez, assuming all the rights of the partnership constituted by him with plaintiff and Daniel Ramírez, *uses the funds, properties or profits of the partnerships in such an arbitrary manner as to create debts or the disappearance, removal or concealment of said funds, properties or profits of the above-mentioned partnerships, plaintiff Arcadio Ramírez Cuerda will be legally bound to answer with all of his property for the debts created by Víctor M. Ramírez,* without Arcadio Ramírez Cuerda having an opportunity to intervene or supervise the contracts or acts performed by Víctor M. Ramírez in the name and in representation of R. & R. Laboratories and Distilleries V. M. Ramírez & Co. And as in the case at bar it appears that Arcadio Ramírez Cuerda is not allowed to intervene or supervise, it seems to us that in furtherance of justice the court should intervene through a receiver. Plaintiff's evidence shows that Arcadio Ramírez Cuerda holds a substantial interest in the properties, funds, proceeds, and profits of both partnerships, which funds, properties, proceeds, and profits are in the hands and under the control of defendant Víctor M. Ramírez, who has not allowed the plaintiff to intervene therein from September to October 1943, and such evidence reveals the fact that said properties, funds, proceeds, and profits of the partnerships are in imminent and real danger of being confused with other properties, funds, and proceeds or of being removed during the pendency of this action." (Italics ours.)

We concede that the power to appoint a receiver should be exercised only where such relief is absolutely necessary in order to protect the interests in litigation during the pendency of the main action, and that this remedy should not be availed of if there exists any other remedy which without unnecessarily injuring the interest of the party against whom it is issued, affords adequate protection to the rights of the parties seeking the same. It has been thus held in *Balasquide* v. *Rossy, District Judge,* 18 P.R.R. 33; *P. R.*

*Racing Corp. et al.* v. *District Court of San Juan,* 32 P.R.R. 800, and *Rodríguez et al.* v. *District Court (per curiam* decision of Jan. 15, 1942), 59 *D.P.R.* 977. To the same effect, see *Hawkins* v. *Aldridge,* (Ind., 1937) 7 N. E. (2d) 34, 109 A.L.R. 1205. But in applying these principles account should be taken of the ample discretion which a judge has and should exercise upon the facts and circumstances of each case.

As we have already said, in the present case there are involved two partnerships constituted for an indefinite time. Plaintiff notified his partners his decision to discontinue them and asked for a liquidation of the same. But his co-partners, Víctor M. Ramírez, as alleged by the plaintiff, in his own right and in representation of his brother partner Daniel Ramírez, refused to acknowledge in Arcadio Ramírez Cuerda the capacity of partner alleged by him and consequently refused to liquidate the partnerships, taking charge of the business himself. In view of the fact that Víctor M. Ramírez refuses to acknowledge the rights alleged by the plaintiff as partner, not only to obtain the dissolution but also to have any share in the liquidation of the partnerships, § 182 of the Code of Civil Procedure is applicable in its pertinent part which reads as follows:

"A receiver may be appointed by the court in which an action is pending or has passed to judgment, or by the judge thereof:

"1. In an action. . . between partners or others jointly owning or jointly interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured."

In California, from where the above-quoted Section in part was taken, it was held in *Breedlove* v. *J. W. & E. M. Breedlove Excavating Co.,* (Cal., 1942) 132 P. (2d) 239, 241:

"It is true that the power conferred upon a court to appoint a receiver is a delicate one, and must be exercised with caution lest injury be done to the parties and their properties. . ., and the remedy

is to be regarded as an extraordinary or harsh one, to be resorted to only in cases where other less onerous remedies are not available . . . ; yet the question is one which is commonly addressed to the sound discretion of the court, exercised upon all the facts. . ., and where a finding, based upon conflicting evidence, is to the effect that danger is threatened to property or funds, and the appointment of a receiver is made, it is seldom that the reviewing court will hold that the lower tribunal has been guilty of an abuse of the discretion confided to it. (Citing authorities.) Indeed, so broad is the discretion of the chancellor to whom the petition is first addressed. . . that such exercise will be interfered with by an appellate tribunal only in those cases where there has been an arbitrary exercise of the power. (Citing authorities.)''

And in *Whitley* v. *Bradley*, (Cal., 1910) 110 P. 596, 598, it was stated:

''Equitable relief by way of the appointment of a receiver will be invoked only where the exigencies of the case clearly appear to absolutely require it for the conservation of the rights of all the parties concerned in the litigation giving rise to the application for such relief. The appointment of a receiver is justly regarded as an extraordinary or harsh remedy, and a court of equity will never exercise its discretion favorably to a motion invoking the aid of this remedy except upon a satisfactory showing that such relief is necessary in order to preserve and fully protect the rights of all the parties. (Citing authorities.) It must, of course, be made to appear that the person seeking such relief has at least a probable right or interest in the property or fund involved in the litigation, and that there is danger of its being lost or destroyed or misappropriated unless a receiver be appointed pendente lite; and where, upon conflicting testimony, such right or interest and danger of the destruction or misappropriation of the property or fund are found to exist, a reviewing court is as a general rule in no position to say that a nisiprius court has abused its discretion in the appointment of a receiver. (Citing authories.) The determination of the question here must therefore of necessity rest upon the proposition whether the evidence upon which the order appealed from was made affirmatively discloses an abuse of discretion.''

In the present case the evidence introduced in the lower court tended to show the relationship of partners between

plaintiff and the defendants. The existence of that relationship, even though contradicted by Víctor M. Ramírez and by certain evidence which tended to show that Arcadio Ramírez Cuerda received commissions for articles sold by the firm, is supported by the testimony of the plaintiff and of Emilio Sorrentini, inspector of beverages, and by the power of attorney executed by Víctor M. Ramírez before Notary Sixto Charneco Murillo, on June 8, 1943, wherein Víctor M. Ramírez expressly stated that Arcadio Ramírez Cuerda was managing partner of Distilleries V. M. Ramírez & Co. and R. & R. Laboratories.[7] It is also supported by a considerable number of checks, some for large amounts of money,[8] signed by Arcadio Ramírez Cuerda in the name of Distilleries V. M. Ramírez & Co.

The evidence in connection with the investment made by Víctor M. Ramírez in his own name of funds belonging to the partnerships, to which we have already referred, supports the conclusion reached by the lower court as to the danger that threatened the interest of Arcadio Ramírez Cuerda when the partnerships were liquidated. If to this we add that Víctor M. Ramírez remained in possession of the other capital of the firm not affected by the attachment, being in sole charge thereof and not rendering any account to the plaintiff, it is obvious that the conclusion reached by the court on this point is supported by the evidence.

■ There only remains to be decided whether the lower court could have granted another remedy which afforded

---

[7] The second paragraph of said deed reads as follows:

"That Víctor M. Ramírez grants by this document ample and sufficient power as it may be needed, to authorize Arcadio Ramírez Cuerda *his managing partner in Distilleries V. M. Ramírez & Co. and R. & R. Laboratories* to compromise with P. R. Beverages and Flavoring, Inc., the outstanding debt with the firm R. & R. Laboratories." (Italics ours.)

[8] One of August 2, 1943, to the order of United States Collector of Internal Revenue for $120,120, and two of August 3, 1943, to the order of the same collector $90,090 and $60,060, all drawn against the Royal Bank of Canada, Mayagüez Branch, Puerto Rico.

adequate protection to the interest of Arcadio Ramírez Cuerda without injuring the rights of Víctor M. Ramírez.

Petitioner contends that the attachment executed prior to the appointment of the receiver sufficiently protected any interest which Arcadio Ramírez Cuerda might have in the partnerships. It is true that on November 2, 1943, Arcadio Ramírez Cuerda obtained an order to secure the effectiveness of the judgment by virtue of which the amount of $44,812.52 was attached and that by stipulation said attachment was reduced to $22,406.26 on November 10, 1943. But that attachment, as we shall see, did not afford sufficient protection to the rights of Arcadio Ramírez Cuerda.

Section 154 of the Code of Commerce provides:

"No member can demand the delivery of the capital due him from the common funds *until all the debts and obligations of the association have been extinguished,* or until the amount thereof has been deposited, if the delivery can not take place at once." (Italics ours.)

And the Italian professor Lorenzo Mossa in his treatise *Derecho Mercantil,* vol. I, p. 116, cited by the petitioner, when referring to the liability of partners for obligations which the firm might incur after a partner has given notice of his retirement, states:

"The status of partner (in a regular partnership) continues and follows the partner of limited liability, even after he has retired or been excluded from the firm. The limit of time of obligations of the partner ceases at the time of the publication of notice of his retirement from the firm, which is tantamount to a dissolution of the relation existing between the partners. On that day he remains liable for all the acts of the firm, *being also liable for all the outstanding debts, on principle, to answer with his share which should be retained until after the operations have been finished.*" (Italics ours.)

Therefore, the attachment levied by a partner on properties belonging to the firm in order to secure his own share upon the liquidation thereof, can not prejudice the creditors

of the firm, inasmuch as his right to demand the delivery of his share is subject to the payment of all the debts and obligations of the partnerships. And since the other partner, Víctor M. Ramírez, continued in the management of the firm, without permitting the intervention of the plaintiff, it might happen that a great part or the whole of the $22,406.26 might have to be applied to the debts incurred by the partnerships before as well as after the attachment. It could also happen that Víctor M. Ramírez might incur such obligations, in the name of the firm, even upon liquidating the business pending at the time that the plaintiff partner retired, or misappropriate the properties of the firm, to such an extent that upon liquidation, in order to answer for the obligations of the firms, it might be necessary to apply not only the $22,406.26 which were attached, but also the private properties of the partner Arcadio Ramírez Cuerda.

The petitioner further contends that the court could have required him to furnish bond to answer for the prejudice that might be caused to the plaintiff, and that said bond would sufficiently protect his rights. Considering that once the bond is furnished Víctor M. Ramírez will continue in charge of the business, and this being a litigation between partners, we do not see how that remedy could afford the adequate protection. The share that might correspond to the plaintiff upon the liquidation of the partnerships is contingent, depending, as we have seen on the manner in which Víctor M. Ramírez manages the businesses of the partnerships. Even after bond is furnished, he would be in charge of the books of account and since the plaintiff has no access to them, it would be very difficult to learn what balance, if any, would correspond to the plaintiff according to said books. It would be an entirely different matter in the case of a creditor, who having his credit secured by a sufficient bond, has nothing to worry about the manner in which the business of the partnerships is conducted.

The remedy of injunction would not be adequate either. It would only serve to paralize the business of the firms, running the risk of incurring new debts by reason of the nonfulfillment of the actual operations without counting the loss that might be caused by the failure to receive the profits that might accrue from new business which by way of the appointment of a receiver could be carried out thus keeping the partnerships as going concerns.

In discussing the other remedies suggested by the petitioner which, in his opinion, could properly substitute the appointment of the receiver, without being so onerous, we have had to base our statements on mere possibilities which have not been proved in this case. It seems advisable to explain that in upholding the order decreeing the appointment of the receiver, we have not based our decision on those possibilities that may or may not occur, and which by themselves do not justify the appointment of the receiver, but we have grounded the same on facts proved in this case from which it is evident that properties of the alleged partnerships are in danger of being lost if the court fails to appoint the receiver in order to prevent defendant, petitioner herein, from misappropriating them.

For the foregoing reasons we feel bound to conclude that the lower court did not abuse its discretion in appointing the receiver in this case. It has been shown that during the pendency of the main action the petitioner herein must be prevented from misappropriating the capital of the partnerships to the prejudice of the interest which plaintiff might have therein.

The petition for certiorari is denied and the record remanded to the lower court for further proceedings not inconsistent with this opinion.