[Civ. No. 1001. Third Appellate District.—November 27, 1912.]

JOHN DOUDELL, Respondent, v. JOHN J. SHOO, JOSEPHINE J. SHOO, and L. F. HERRICK, Appellants.

PARTNERSHIP — ACCOUNTING — PLEADING — EXISTENCE OF PARTNERSHIP SHOWN.—A complaint for an accounting of partnership assets, which alleges that the plaintiff and one of the defendants entered into a parol contract of partnership, whereby they agreed to associate themselves together for the purpose of conducting and maintaining a certain business therein described, and to acquire personal and real property suitable for the purposes of the business they had agreed to carry on, and for the purpose of dividing the profits of

said business between them, clearly shows the existence of a partnership as defined in section 2395 of the Civil Code.

ID.—AGREEMENT TO ACQUIRE LAND IN DEFENDANT'S NAME—CONSTRUCTION OF COMPLAINT—TIME OF RECOVERING PARTNERSHIP ASSETS.—Where the complaint alleges an agreement to secure an option in the name of the defendant to purchase the land and buildings required for the partnership business, and that he borrowed twenty thousand dollars for payment upon its acceptance, and an agreement that the unpaid principal and interest should be paid from rents and profits, and that when so paid, plaintiff would pay to defendant one-half of said sum of twenty thousand dollars, and that said real property "should be and become part of the copartnership assets," the complaint is to be construed as meaning that the property was to become partnership assets when purchased by defendant, and not when it was fully paid for.

ID.—CONTRACT OF EMPLOYMENT UPON EQUAL SHARES OF PROFITS NOT SHOWN—PARTNERSHIP ONLY ALLEGED.—The complaint discloses no contract of employment by the defendant of the plaintiff upon an equal share of the profits, without a vested interest therein, but it clearly alleges a partnership only, where it states that the parties agreed to purchase the property for partnership purposes, that they did so, and jointly took possession of the property, and agreed to carry on the business for which they associated themselves together, and to jointly share the profits thereof.

ID.—LIABILITY FOR DEBTS OR LOSSES IMPLIED FROM AGREEMENT TO DIVIDE PROFITS.—It is not essential to a partnership that there should be an express agreement to pay debts or losses incurred in carrying on the business. The law implies an agreement to divide the losses from an agreement to divide the profits of the business, unless it is otherwise expressly stipulated.

ID.—PAROL CONTRACT OF PARTNERSHIP NOT A LEGAL CONCLUSION—ISSUABLE FACT—AVERMENT SUFFICIENT.—The statement that the parties "entered into a parol contract of partnership," is not the statement of a mere legal conclusion, but presents an issuable fact. Where such averment is immediately followed by the allegation, "whereby they agreed to associate themselves together for the purpose of conducting and maintaining" the business therein named, it sufficiently states a partnership under the code definition thereof.

ID.—RULE OF PLEADING—ULTIMATE FACTS—DISTINCTION FROM EVIDENTIARY FACTS.—In pleading, where ultimate, and not probative facts are dealt with, much more liberality must be indulged in as to the statement of the facts of the transaction on which the action is founded than can be accorded to the witnesses, who must give evidentiary facts only.

ID.—SUFFICIENT AVERMENT AS TO PARTNERSHIP TITLE TO REAL PROPERTY—PLAINTIFF'S INTEREST.—Notwithstanding by the agreement

the title to the real property was taken in the name of the defendant, the complaint sufficiently alleges not only that the improvements put upon the real property and the stock in trade and all fixtures and paraphernalia used in connection with the business entered into, but also that real property was purchased by the partnership, in pursuance of the option secured, and was to be paid out of the profits of the business and the rents derived from certain parts thereof, and the principal purchase price and interest had been fully so paid, thus showing that the real property was the property of the partnership, and that the plaintiff has an interest as a partner in such title.

ID.—AVERMENT OF PARTNERSHIP TITLE IMPORTANT AS TO ACCOUNTING—EXISTENCE NOT ESSENTIAL TO PARTNERSHIP.—Though the averment of the partnership's title to the real property is important as to the accounting; yet, in order to constitute a partnership, it is not necessary that there should be real property forming its capital jointly owned by the partners. It may be the separate property of the partners, but if they share in the profits and losses arising from its use, a partnership exists.

ID.—DURATION OF PARTNERSHIP—STATUTE OF FRAUDS—ORDER STRIKING OUT—PARTIAL EXECUTION—PARTNERSHIP AT WILL—EXISTENCE UNTIL DISSOLUTION.—The objection to the complaint that the contract for partnership involved at the final hearing was void under the statute of frauds, embodied in section 1624 of the Civil Code, as having been made for three years, is not available, where it was stricken out upon motion. But, since it was partly executed, the only effect that it could have upon the agreement finally enforced, would be to convert it into a partnership at will, which exists until something is done to dissolve it.

ID.—PAROL AGREEMENT TO ACQUIRE LAND FOR PARTNERSHIP PURPOSES NOT VOIDABLE UNDER STATUTE OF FRAUDS.—It is settled upon abundant authority that a parol agreement to acquire lands for partnership purposes, is not voidable under the statute of frauds. Where, in the present case, the object of the partnership agreement was not only to carry out the partnership business, but also to purchase real property to be used for the purposes of the partnership, as well as to acquire personal property for such purposes, it is held there is no distinction between the transaction by the partners as to the real property and the transaction by them involving the purchase of the goods and wares which they agreed to engage in selling.

ID.—PROPER JOINDER OF VENDEE OF DEFENDANT PENDING ACTION IN EQUITY TO SETTLE PARTNERSHIP.—Where it is alleged in the action in equity to settle the partnership rights as to the real property involved, that prior to the filing of an amended and supplemental complaint therein, and during the pendency of the action, the defendant partner conveyed said real property to another person, it was

proper and necessary to a final adjudication as to said real property, that the grantee should be joined as a party defendant to the action.

Id.—Causes of Action not Misjoined—Grounds for Equitable Relief.—There is no misjoinder of causes of action in the suit in equity to settle the partnership, in which the principal relief asked is to establish the partnership, and for an accounting of the partnership assets and business. The prayer for an injunction and for the appointment of a receiver is only in aid of the relief sought. As the subject matter of the action relates to but one transaction, it is the settled practice in equity, in order to avoid a multiplicity of suits, to allow suit, in the same action, for every species of relief necessary to secure the rights of the plaintiff in such subject matter.

Id.—Amended and Supplemental Complaint not Ambiguous or Uncertain.—The amended and supplemental complaint is not subject to a demurrer for ambiguity or uncertainty, where it appears that the amended complaint is sufficiently certain, and that the supplemental complaint shows with certainty that the relief sought therein relates to matters arising after the commencement of the action.

Id.—Evidence—Payment by Plaintiff upon Option—Cross-examination — Inconsistent Statement as to Loan — Admission—Repeated Question—Ruling Without Prejudice.—Where the plaintiff testified in chief that, upon securing the option to purchase the real property in question, he paid the owner the sum of one hundred dollars to be credited on the purchase price, it was proper to show on cross-examination that plaintiff had made an inconsistent statement upon a former hearing that he loaned the money to the defendant who acquired the property, which, in answer to a question, he admitted that he might have made, and the question was repeated, the court's ruling that there should be no further cross-examination was without prejudice. Where a question is asked and answered in a manner which indicates that no different answer could probably be given to the same question, the trial court is not bound to have its time consumed by such question uselessly repeated.

Id.—Inconsistent Statements—Impeachment of Witness—Foundation Required—Absence of Impeachment—Proof Required Without Foundation.—Where it is sought to impeach a witness by showing that he had previously made statements at variance with his present testimony, such statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, or if the statements be in writing, they must be shown to the witness before any question is put to him concerning them. But if no special impeachment is sought, a witness may be required to answer on cross-examination as to inconsistent statements, without laying any foundation therefor.

ID.—EVIDENCE—AMOUNT OF SALARY ALLOWED BY DEFENDANT TO PLAIN-
TIFF—DISALLOWANCE NOT PREJUDICIAL—REPETITION OF TESTIMONY
—AMOUNT READILY ASCERTAINABLE.—Where the defendant was
asked as to the amount of a salary of one hundred dollars per
month which he testified had been allowed to the plaintiff, there was
no prejudicial error in disallowing the question, where it related
to evidence which he had previously given to the effect that plain-
tiff received one hundred dollars per month for every month that he
was actually engaged in the business, and the amount paid was easily
and readily ascertainable by arithmetical calculation.

ID.—PROPER DISALLOWANCE OF EVIDENCE UNDER OMNIBUS QUESTION—
DUTY OF COUNSEL—ABSENCE OF PREJUDICIAL ERROR.—Where the
defendant testified that some of the matters that plaintiff had
testified to concerning himself and the defendant occurred, and some
did not occur, the asking of the omnibus question by his counsel,
"What part did, and what part didn't?" the trial court was not
bound to allow in that form. His counsel should have taken up the
alleged incorrect statements separately, if relating to different acts
or matters, and have called the attention of the witness thereto, and
have asked him whether they were or were not correct. Moreover,
there could be no prejudicial error in disallowing the question asked,
where the record shows that the defendant went fully into all
matters pertaining to the differences between the parties, and stated
repeatedly that "that is all that occurred."

ID.—ADOPTION OF REPORT OF REFEREE — ACCOUNTING OF PARTNERSHIP
BUSINESS AND ASSETS—QUESTION AS TO NOTICE OF HEARING—SUF-
FICIENT PROOF.—The court committed no prejudicial error in adopt-
ing the report of a referee appointed to take an accounting of the
partnership business and assets, on the alleged ground that defend-
ant and his counsel had no notice of the time and place of the
hearing before the referee, where the affidavit of his counsel to that
effect is rebutted by the referee's certificate that both parties re-
ceived such notice, and also by the affidavit of plaintiff's counsel
that he gave personal notice to defendant's counsel of the hearing,
and requested his presence thereat, and stating that defendant was
personally represented at the hearing by his business agent, which
fact was uncontradicted.

ID.—IMPLIED NOTICE OF HEARING AND WANT OF DILIGENCE—KNOWLEDGE
OF REPORT OF REFEREE AND FAILURE TO OBJECT—FINDINGS—NOTICE
—PRESUMPTION AGAINST GROUND OF OBJECTION.—Where all of the
parties were present in court when the referee was appointed and
knew of the terms of his appointment and the directions of the
court as to his duties, they were put on their guard to exercise rea-
sonable diligence to have ascertained the time and place at which
the testimony was taken by the referee, and when the defendant and
his counsel failed in such reasonable diligence, they were chargeable

with implied negligence. And where defendant and his counsel knew of the filing of the report of the referee, and failed to object thereto until it was incorporated in the findings of the court, it must be assumed that defendant had no ground of objection to the report.

ID.—TIME FOR EXISTENCE OF PARTNERSHIP—IMMATERIAL FINDING.— Where after the striking out of the averment as to the time of the existence of the partnership the principal point in issue was whether there was a partnership agreement at all, and if there was, and the partners had entered upon the execution of the terms of the agreement, it is of no material importance whether such partnership was to continue for a limited time or indefinitely. It is held that a finding that it was to continue until the real property had been paid for is of no special importance, and is not ground for reversal because not sustained by the pleadings.

ID.—SUPPORT OF FINDINGS FOR PLAINTIFF — CONFLICTING EVIDENCE— AFFIRMANCE OF DECISION.—Where the evidence is substantially conflicting, and there is sufficient evidence for the plaintiff to support the findings in his favor, the decision of the trial court in plaintiff's favor must be affirmed upon appeal.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Royal A. Carter, Carl F. Wood, and A. L. Frick, for Appellants.

C. K. Bonestell, for Respondent.

HART, J.—This action was brought for an accounting of the partnership property and business of the plaintiff and the defendant, John J. Shoo.

The complaint alleges that, in the month of July, 1909, the plaintiff and the defendant, John J. Shoo, entered into a parol contract of copartnership, "whereby they agreed to associate themselves together for the purpose of conducting and maintaining a billiard and pool hall and saloon and cigar business in the city of Coalinga, county of Fresno, state of California, and dividing the profits thereof equally between them"; that, by the terms of said contract, the plaintiff was to have the sole and entire management of said business; that,

at the time that said contract was entered into, it was further agreed by and between said parties that they would obtain an option to purchase, in the name of the defendant, John J. Shoo, four certain lots, with the improvements thereon, situated in said city of Coalinga; that the improvements on said lots consisted of buildings suitable to the purposes of the business which, as before indicated, they had agreed to engage in; that, in pursuance of said agreement, the plaintiff and defendant John J. Shoo, on the twenty-first day of July, 1909, obtained an option, in writing and in the name of said John J. Shoo, from the owners of said real property to purchase the same for the total sum of sixty-five thousand dollars, on the following terms; twenty thousand dollars to be paid on the first day of August, 1909, and fifteen thousand dollars on the first day of every succeeding August until the full purchase price was paid, together with interest at the rate of six per cent per annum on the deferred payments; that neither plaintiff nor John J. Shoo had ready money with which to make the first payment as aforesaid, and it was, therefore, agreed between them that said Shoo should borrow the sum requisite to make such payment; that the balance remaining unpaid on the purchase price should be paid as the installments thereof and interest became due out of the profits of the copartnership business and the rents to be derived from said property; that when the entire purchase price should have been so paid, the plaintiff should pay to said Shoo one-half of the said sum of twenty thousand dollars borrowed by him for the purpose of making the first payment on the purchase price and one-half of the interest which said Shoo might have paid on said sum of twenty thousand dollars; that said real property "should be and become part of the co-partnership assets."

The complaint then proceeds to allege that all the terms of the said agreement were carried out as above averred, and that, on the first day of August, 1909, the "plaintiff and said defendant, as partners, entered into and took possession of said premises and proceeded to conduct, and ever since have conducted therein as partners, a saloon and cigar business in conjunction with pool and billiard tables, and have ever since let out other portions of said premises and received rent therefor; that plaintiff has, from said 1st day of August,

continuously, up to the time he was expelled from participation in the affairs of said copartnership, as hereinafter set forth, had the sole and entire charge of said business; that, on the 8th day of February, 1910, said defendant, Shoo, against the will of plaintiff, forcibly excluded him from said premises and from any participation in any of the affairs of said copartnership, and has ever since kept him excluded from all thereof, and has ever since refused, and still refuses to permit plaintiff to participate in any thereof, or to account to him for anything belonging to said copartnership. That said defendant has ever since claimed, and now claims, to be the sole owner of everything belonging to said copartnership, whether real or personal property." The complaint (supplemental) further avers that Shoo, after the commencement of this action, caused to be executed and delivered to him by the vendors thereof a deed to all the real property purchased as aforesaid as copartnership property, and that on the same day such deed was so executed and delivered (February 28, 1910), said Shoo and the defendant, Josephine J. Shoo, his wife, executed and delivered a deed to said property to the defendant, Herrick; that said copartnership has made large profits and rents out of the business conducted and the property owned by it, amounting to the sum of twenty-five thousand dollars, which has been expended in the extinguishment of the debts of the copartnership; that the defendant has received and retained for his own use from the profits of said business the sum of four thousand dollars, while the plaintiff has likewise received and retained for his own use the sum of nine hundred dollars, only; that, at the time of the commencement of this action, there was on deposit in two banks in Coalinga, in the name of the defendant, Shoo, a sum exceeding three thousand dollars, which belongs to said partnership.

It is then alleged that, prior to the commencement of this action, the defendant, John J. Shoo, conveyed and assigned to the defendant, Josephine J. Shoo, all of his property "for the purpose of evading pecuniary responsibility for any of the acts hereinabove set forth."

Ancillary to the principal relief sought for as above stated, the prayer is for a decree enjoining the defendants, their agents, etc., from interfering with the plaintiff in partici-

pating in the management of said business and the partnership property, etc., etc., . . . and for the appointment of a receiver, *pendente lite,* to take possession of all the partnership property and business, etc.

Each of the defendants filed demurrers, both general and special, to the complaint. Among the grounds specially urged against the complaint are those of misjoinder of parties defendant and misjoinder of causes of action and that it is ambiguous and uncertain.

The demurrers having been overruled, each of the defendants answered the complaint, specifically denying the averments thereof and charging, as do the special demurrers, a misjoinder of parties defendant, misjoinder of causes of action, and that the averments of the complaint are ambiguous and uncertain.

The court found that a copartnership agreement was entered into by and between the plaintiff and the defendant, John J. Shoo, at the time and for the purposes set out in the complaint; that, in pursuance of said agreement, they, as equal partners, entered into and took possession of the premises described in the complaint, and proceeded to conduct and maintain thereon, as equal partners, the saloon and cigar business and billiard hall, and have ever since conducted and maintained thereon such business and billiard hall; that, in the name of the said defendant, Shoo, they acquired, as equal partners, and for partnership uses, the real and personal property described in the complaint; that, at the time mentioned in the complaint, the defendant, John J. Shoo, "against the will of plaintiff, wholly excluded him from said partnership property and business and from any participation in any of the affairs of said partnership, and has ever since kept him wholly excluded therefrom, and has ever since refused to account to him for or concerning anything relative to said partnership''; that profits from said business and rents from portions of the real property purchased by them as described have been derived and received, and that a portion of the profits and rents so derived and received have been expended in remodeling and repairing buildings standing on said real property and in making payments on the interest on the unpaid purchase price and on the principal thereof; that the plaintiff and said Shoo have each received and retained a share of the profits of said

business, "but unequal in amount"; that there are debts outstanding against said partnership, and "that since the exclusion of plaintiff from said business, the defendant, John J. Shoo, has had the management and control of the partnership business and property and has received and paid out sums of money in connection therewith."

As to the interest of the defendant, Herrick, in this controversy, the court finds that money had been loaned by him and applied on account of the purchase price of the partnership real property "and the legal title to said property has been transferred to said Herrick as security for the payment of said loan."

The court, as a conclusion of law from said findings, determines "that an accounting is necessary between plaintiff and the defendant, John J. Shoo, covering all of the property and business found to exist between them from the commencement thereof."

The decree, which is characterized in the transcript as an "Interlocutory Decree," followed the findings and the conclusion of law, but required and provided for the appointment of and named a referee, to whom was committed the power and the duty of taking a full accounting of all of the copartnership dealings and transactions between the plaintiff and the said defendant, John J. Shoo, as described in the complaint, and postponed the making of further findings and of a final decree "until the coming in and settlement of the referee's report."

After the filing of the report of the referee, the court adopted the same and made it a part of the findings theretofore made, and upon the findings so made, and the conclusions of law educed therefrom, made and entered its final decree, adjudging the plaintiff and the defendant, John J. Shoo, to be partners, as set forth in the complaint, and adjusting the matter of the accounting of their partnership business and property in conformity with the findings and report of the referee.

The defendant appealed from the "interlocutory decree" and from an order denying a motion for a new trial after the entry of said decree. After the rendition and entry of the final decree, the defendants moved for a new trial, which

motion was denied, and they then noticed and took an appeal from the order denying said motion.

The defendants contend that the complaint does not state facts sufficient to constitute a cause of action for the following reasons, viz.: 1. That it is not therein or thereby shown that the plaintiff and the defendant, John J. Shoo, entered into or formed a partnership, and in this connection it is contended that the mere allegation that they "entered into a parol contract" involves nothing more than the statement of a legal conclusion, and that the facts pleaded disclose a contract of employment, only, whereby the plaintiff was to render the services alleged in consideration of one-half of the profits of the business referred to in the complaint; 2. That the contract pleaded in the complaint is void under the statute of frauds in that it involves "an agreement that by its terms is not to be performed within a year from the making thereof." (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973); 3. That, as to the real property which it is alleged the parties agreed to purchase as partnership property, the contract is void under the terms of section 1624 of the Civil Code.

In addition to the general objections thus urged against the complaint, the points, arising under the special demurrer, that there is a misjoinder of parties defendant, a misjoinder of causes of action and that the complaint is ambiguous and uncertain are also pressed by the defendant, John J. Shoo, and discussed in the briefs.

The further complaint is made of certain rulings of the court in the allowance and rejection of certain testimony.

1. A partnership is defined by section 2395 of our Civil Code as follows: "The association of two or more persons for the purpose of carrying on business together, and dividing the profits between them." The complaint, in our opinion, clearly discloses a contract by which the plaintiff and John J. Shoo associated themselves together for the purpose of carrying on and conducting the business therein mentioned as partners. The complaint, as has already been shown, reads: "That the plaintiff and said John J. Shoo entered into a parol contract of copartnership whereby they agreed to *associate themselves together* for the purpose," etc. Again, in the second paragraph, it is alleged that said contract also involved a covenant whereby they agreed to obtain an option,

in the name of the defendant, Shoo, to purchase in the city of Coalinga certain real property, on which were located buildings appropriate "for the *business which plaintiff and defendant had agreed, as hereinabove stated, to carry on.*" In the same paragraph it is averred that, the sum of twenty thousand dollars having been paid to the vendor upon the acceptance of the option from money borrowed by the said defendant, it was agreed that the unpaid principal and interest should be paid from the profits and the rents derived from said business and said property, and that when the same was fully paid, then the plaintiff should pay to the defendant one-half of the said twenty thousand dollars used in making the first payment as aforesaid and one-half of any interest which said defendant might have paid thereon, and that said real property "should be and become part of the partnership assets." These averments, obviously, go much further than the statement of the mere conclusion that the parties formed themselves into a copartnership. They show, as we have declared, that they agreed to and did associate themselves together as partners; that they jointly purchased certain real and personal property for carrying on the business which they had associated themselves together as partners to carry on; that, as partners, they jointly entered into and took possession of said property; that they agreed to share equally the profits of said business. But counsel appear to assume that the averment that the real property "should be and become partnership assets" means that such property should not become such until it was fully paid for. We cannot agree with that construction. Interpreted by the light of the complaint as a whole, that averment clearly and unmistakably means that the real property, upon its acquisition by the plaintiff and Shoo under the circumstances indicated by the complaint, should then "be and become partnership assets." In this view of the complaint, and particularly of the averment just referred to, there can be no difficulty in distinguishing from the present case the cases cited by appellants, and in which it was held that the complaints disclosed by their averments not a contract of copartnership (the theory upon which they were drafted) but a mere contract of employment, whereby the plaintiff was employed by the defendant to perform services in consideration of an equal

share with his employer in the profits of the business upon which such services were to be bestowed. We will examine some of the cases referred to. In *Stone* v. *Bancroft*, 112 Cal. 652, [44 Pac. 1069], the plaintiff was employed at a monthly salary to manage the business of the defendant, and in addition thereto the defendant agreed to give the plaintiff a one-tenth interest in said business upon the condition that the plaintiff would devote his whole time and best energies, for a period of not less than ten years from the date of the agreement, to the carrying on of said business. The plaintiff quit his connection with and management of the business before the expiration of the time during which he was to manage the same as a condition precedent to the vesting in him of the one-tenth interest therein. The supreme court very properly held that the plaintiff never acquired a vested interest in the business because of the failure of the contingency upon which his title was to vest.

In *Coward* v. *Clanton*, 122 Cal. 451, [55 Pac. 147], the complaint alleged that the defendant agreed with the plaintiff to purchase with his own funds real estate and that the plaintiff, for selling the same in subdivided tracts, should receive one-half the profits of all sales so made. It was held, as very clearly the complaint revealed, that the agreement pleaded was one whereby the defendant employed the plaintiff to perform the stipulated services for certain specified compensation.

*Lyden* v. *Spohn-Patrick Co.*, 155 Cal. 177, [100 Pac. 236], was where the plaintiff and the defendant entered into a contract whereby the former hired his services to the latter in carrying on and conducting for the defendant the canned salmon business and for which services it was agreed that the plaintiff should receive a salary of two hundred dollars per month and, additionally, one-half the net profits of said business. The company had the right to reject sales and to determine the matter of the credit of parties to whom sales were made. The agreement was to continue for six months from its date, ''and was to continue thereafter, in consecutive periods of six months each, for three years from its date, if at the end of the first six months and each successive six months, respectively, there should be no net loss to the company.'' It was further agreed that if either party failed to carry out any portion of the agreement the same should for

that reason become null and void at the option of either party. The supreme court held, as it could not justly otherwise be held under the facts as stated, that the contract did not make the plaintiff a partner in the business, and said: "He was to have no title to any of the property and was not liable for any of the debts. His entire interest in the business consisted in his right to receive one-half of the profits as his compensation."

In the case at bar, as will be noted, there is no language in the agreement as pleaded, as we construe and understand it, which provides, as do the agreements involved in two of the cases above referred to, any condition or contingency upon the performance or happening of which only the interest of the plaintiff as a partner in the business and property mentioned in the complaint was to vest. The allegation is not, as before declared, that the plaintiff's title was not to vest until some future time or only in the event that the purchase price was in fact fully paid and the defendant, Shoo, repaid by the plaintiff one-half of the twenty thousand dollars advanced by said Shoo as the first payment. The only reasonable interpretation of the language of the complaint is, as we have shown, that the parties agreed to jointly purchase the property for partnership purposes, that they did so and jointly entered into and took possession of said property, that they were to jointly carry on the business, to carry on which they had associated themselves together, and to jointly enjoy in equal shares the profits thereof.

But it is insisted that the complaint fails to disclose a partnership because it is not therein made to appear that the plaintiff agreed to be liable for the debts contracted in carrying on the business. This contention is not sound. Manifestly, as counsel for the plaintiff suggests, liability for debts can mean nothing else but liability for losses, and where a contract of copartnership contains a stipulation or agreement for the division of profits and none as to the division of losses, the law will imply a joint responsibility for the latter by the partners. Section 2404 of the Civil Code provides that "an agreement to divide the profits of a business implies an agreement for a corresponding division of its losses, unless it is otherwise expressly stipulated."

In *Coward* v. *Clanton*, 122 Cal. 451, [55 Pac. 147], it is said that it is "not true that our code makes profit-sharing a test of partnership," and in the same case it is said: "It would not lack much of a good definition of a partnership if the clause (Civ. Code, sec. 2395) in regard to the division of profits were omitted. It would read that 'a partnership is the association of two or more persons for the purpose of carrying on business together.'" Thus it will be observed that the effect of an agreement whereby two or more parties associate themselves together for the purpose of carrying on business, without any reference or covenant therein as to the division of profits, would be to establish them as partners, unless there was some other express stipulation therein that such was not intended to be their legal relation. But where, as here, the agreement goes further and stipulates that there shall be a division of profits without a stipulation of any character as to the division of losses, the latter liability is implied from the provision for the division of profits. (See *Quinn* v. *Quinn*, 81 Cal. 15, [22 Pac. 264]; *Whitly* v. *Bradley*, 13 Cal. App. 721, [110 Pac. 596]; *Brooke* v. *Tucker*, 149 Ala. 96, [43 South. 141].)

Nor is the statement in the complaint that the parties "entered into a parol contract of copartnership" to be regarded, as is the contention, as a mere legal conclusion. Of course, it is true, as may likewise be said of many averments of ultimate facts, that the mere statement alone that two or more persons have formed themselves into a copartnership may be said to involve the statement of a conclusion of law. An averment in an action to recover real or personal property that the plaintiff is the *owner* thereof is no less the statement of a legal conclusion than the one criticised here, yet such averment of ownership has always been held to involve the statement of an issuable fact. However, it will be observed that the averment as to the contract of partnership in this case is followed by the allegation, "whereby they agreed to *associate themselves together* for the purpose of conducting and maintaining" the business therein named, and this language itself is a sufficient statement of a partnership under our code definition thereof, as construed in *Coward* v. *Clanton*, 122 Cal. 451, [55 Pac. 147.]

There is nothing said in the case of *Hammon* v. *Borgwardt,* 126 Cal. 613, [59 Pac. 121], in conflict with the construction of the complaint in the respect here considered. In that case, a witness at the trial upon an issue of partnership made the statement, in his testimony, that a certain party was his "partner." This statement, the supreme court correctly held, constituted "at best, a mere legal conclusion." Of course, there can be no proposition less subject to dispute than that it is not for the witnesses but for the court or jury to say from the facts whether a partnership between two or more persons exists, and the former are not permitted to give their opinions upon that proposition but must simply state facts from which the final arbiter thereof must determine the ultimate truth of such controversy. In pleading, where ultimate and not probative facts are dealt with, much more liberality must of necessity be indulged as to the statement of the facts of the transaction on which the action is founded than can be accorded to the witnesses who must give evidentiary facts only. As before suggested, in many cases it would be impossible to state a cause of action in a pleading without embracing a statement which, in a strict view, would involve a legal conclusion. For instance, in the case at bar, strictly speaking, the statement that the parties "associated themselves together" for the purpose of jointly carrying on a business might be regarded as the statement of a conclusion from certain acts and facts that had constituted them partners. But it would be difficult, indeed, to perceive how any other statement of the fact of partnership could be made in the complaint without averring probative facts, contrary to the recognized rules of good pleading. The witnesses are required to state to the court or jury the very facts from which the facts pleaded are drawn, and, obviously, as stated, it is beyond their province as such merely to state their conclusion from the facts, which would, of course, throw no more light on the transaction on which the action is founded than do the pleadings themselves.

It is further objected that the complaint is not good for want of facts because it does not appear therefrom that the plaintiff was to have title to any of the property with which the business was to be conducted. There is no merit in this objection. The complaint, as has been shown, alleges that

the improvements put upon the real property and the stock in trade and all fixtures and paraphernalia used in·connection with the business they embarked in as partners were paid out of the profits of said business; that the real property they purchased, in pursuance of an option they previously secured, was to be paid out of the profits ·of said business and the rents derived from certain portions of said real property; that out of such profits and rents payments had been made on the principal of the purchase price and the interest accruing thereon.   We are unable to perceive how the plaintiff's title to the property referred to could be made plainer. But while the question whether the title to the real property was to vest in both the plaintiff and the defendant and not in the latter alone is important here because of the prayer for an accounting of the partnership assets, the fact of the joint ownership of the property employed in carrying on the business of a copartnership need not necessarily be shown in order to establish the fact that a partnership exists.   "To constitute a partnership, it is not necessary that there should be property forming its capital, jointly owned by the partners.   The property employed in the partnership business may be separate property of the partners; but, if they share in the profits and losses arising from its use, a partnership exists."   (*Brooke* v. *Tucker,* 149 Ala. 96, [43 South. 141]; *Whitley* v. *Bradley,* 13 Cal. App. 721, [110 Pac. 596].)

2. We see no force in the point that the complaint discloses that the contract pleaded, as to the time within which it is to be performed, is void under the statute of frauds.   (Civ. Code, sec. 1624, subd. 1.)

This contention is inspired by the following averment in the complaint as it was originally filed: "That said copartnership shall continue for a period of not less than three (3) years," etc.   But this allegation and certain other portions of the complaint were stricken out by the court on motion, and, therefore, so far as the complaint is concerned, the point that the contract is void under our statute of frauds is not well taken.   But it has been doubted whether the statute has any application whatever to oral partnership agreements.   "Certainly not," says the court of appeals of New York in *Sanger* v. *French,* 157 N. Y. 213, [51 N. E. 979], "when the agreement has been wholly or partially executed.   But, if it has,

the only effect it could have upon the agreement found by the referee was to convert it into a partnership at will. Such a partnership exists until something is done to dissolve it,'' citing Lindley on Partnership, p. 571. (See, also, *Shropshire* v. *Adams,* 40 Tex. Civ. App. 339, [89 S. W. 448] ; *Weatherford etc. Co.* v. *Wood,* 88 Tex. 191, [30 S. W. 859].)

The agreement here was partially executed—that is, the parties after the formation of the partnership, entered into the active prosecution of the partnership business immediately upon securing the property necessary to do so and continued the partnership until the plaintiff was forcibly excluded from any participation therein by the defendant, John J. Shoo, and even if the allegation as to the time during which the alleged partnership was to exist had not been stricken out, the objection here made to the agreement as thus pleaded would still have been unavailable, since the partnership would necessarily exist until dissolved. This brings us to the consideration of a cognate question involved in the third ground upon which it is argued that the complaint, in so far as it attempts to disclose that the real property therein described was to be and become a part of the partnership assets, is deficient in the statement of facts.

3. The contention upon said proposition is that that part of the agreement which relates to said real property is void under our statute of frauds—that is, as before stated, under the terms of section 1624 of the Civil Code.

But this precise point has been decided by the supreme court adversely to the contention of appellants. In *Bates* v. *Babcock,* 95 Cal. 479, 484, [29 Am. St. Rep. 133, 16 L. R. A. 745, 30 Pac. 905], it is said that, while the question whether such a partnership (that is, to deal in real property) can be formed, except by an agreement in writing, has been the subject of conflicting decisions, yet ''the great weight of authority is in support of the rule that such a partnership may be formed in the same mode as any other, and that its existence may be established by the same character of evidence.'' In support of this view, the court cited and quoted from a number of English and American cases, among the latter, that of *Coward* v. *Clanton,* 79 Cal. 23, [21 Pac. 359], where it was held ''that an agreement for the purchase of a tract of land, and its subdivision and sale in parcels, and for a di-

vision of the profits resulting therefrom, in which one party was to furnish the capital and take a conveyance of the land, and the other to furnish the skill and labor in making the sales, could not be avoided after the transaction had been completed, merely because it was not in writing." (See *Pico* v. *Cuyas,* 47 Cal. 174; *Koyer* v. *Willmon,* 150 Cal. 785, 787, [90 Pac. 135].)

Similar views are to be found in cases from other jurisdictions. In *Dale* v. *Hamilton,* 5 Hare 369, it is held that "a partnership agreement between A and B that they shall be jointly interested in a speculation for buying, improving for sale and selling lands may be proved without being evidenced by any writing, signed by or by the authority of the party to be charged therewith within the statute of frauds; and such an agreement being proved, A or B may establish his interest in land, the subject of the partnership, without such interest being evidenced by such writing." Approving the doctrine as thus laid down, the same court, in *Chester* v. *Dickerson,* 54 N. Y. 1, [13 Am. Rep. 550], clinches the proposition in the following fashion: " . . . But suppose two persons, by parol agreement, enter into a partnership to speculate in lands, how do they come in conflict with the statute of frauds? No estate or interest in land has been granted, assigned, or declared. *When the agreement is made no lands are owned by the firm, and neither party attempts to convey nor assign any to the other.* The contract is a valid one, and in pursuance of this agreement they go on and buy, improve and sell lands. While they are doing this, do they not act as partners and bear a partnership relation to each other? Within the meaning of the statute in such case neither conveys nor assigns any land to the other, and hence there is no conflict with the statute. The statute is not so broad as to prevent proof by parol of an interest in the lands; it is simply aimed at the creation or conveyance of an estate in lands without a writing. . . . This is not a controversy about the title to any of the lands taken or owned by the partners, but it simply relates to the conduct of the defendants while they were acting as partners; and in such a case the statute of frauds certainly can present no obstacle to relief."

In the present case, the object of the agreement of copartnership was not only to carry on the business referred to in the complaint, but also to purchase the real property therein described to be used for the purposes of the partnership. As in the cases above cited, neither of the parties conveyed nor assigned to the other any of the real estate, but they merely carried out, *after* becoming partners, one of the objects of the partnership agreement by purchasing the goods and property referred to in the complaint. We can discern no distinction between the transaction by the partners as to the real property and the transaction by said partners involving the purchase of the goods and wares which they agreed to engage in selling.

4. The next point, arising under the special demurrer, is that there is a misjoinder of parties defendant in the complaint. The complaint, as to the defendant Josephine J. Shoo, was dismissed by the court. As to the defendant, Herrick, the complaint alleges that, during the pendency of this action, and prior to the filing of the amended and supplemental complaint, the defendant, John J. Shoo, conveyed to said Herrick by deed the real property involved in this controversy. Manifestly, under such circumstances, there could be no final adjudication with respect to said real property without making Herrick, the grantee thereof a party to the action. (*Cuyamaca Granite Co.* v. *Pac. Pav. Co.,* 95 Cal. 252, [30 Pac. 525] ; 30 Cyc., p. 573.) Moreover, as this is a proceeding in equity, it was proper "to join as defendants all who have an interest in the subject matter of the litigation." (*County of Tehama* v. *Sisson,* 152 Cal. 167, 179, [92 Pac. 64] ; *Robinson* v. *Gleason,* 53 Cal. 38; *Stewart* v. *Smith,* 6 Cal. App. 157, [91 Pac. 667].)

5. There is no misjoinder of causes of action. The principal relief asked for here is the establishment of the existence of a partnership between the plaintiff and the defendant John J. Shoo, and for an accounting of the partnership assets and business. The prayer for an injunction and the appointment of a receiver is only in aid of the main relief sought. The subject matter of the action relates to but one transaction, and it is a well-settled practice in courts of equity, in order to avoid a multiplicity of suits, to sue in one and the same action for every species of relief which may be necessary

to conserve all the rights of the plaintiff in the subject matter of the action. (*Whitehead* v. *Street,* 126 Cal. 70, [58 Pac. 376]; Story's Equity Pleading, secs. 271, 272a; *Wilson* v. *Castro,* 31 Cal. 429; *Stewart* v. *Smith,* 6 Cal. App. 152, 157, [91 Pac. 667]; *Lanigan* v. *Neely,* 4 Cal. App. 760, [89 Pac. 441].)

6. The objection that the complaint is ambiguous and uncertain is untenable. This criticism proceeds principally from the fact that, in filing an amended and a supplemental complaint, counsel for the plaintiff incorporated the two pleadings into one, and counsel for the defendants declare. that the allegations of the amended complaint and those of the supplemental complaint are so "jumbled together" that it cannot be told therefrom "how much is intended as supplemental and how much as the amended complaint." There are other objections to the complaint under this head. But it is deemed sufficient to say generally, in reply to the objection of ambiguity and uncertainty, that the complaint is very clear with respect to the precise purposes of the action or the relief thereby sought, and that, if it be important for any reason that such distinction should be marked or kept in view, it is not at all difficult to apprehend and distinguish from those of the amended complaint those allegations of fact which, by reason of their having obviously arisen after the commencement of the action, must have necessarily been brought in or made issues by way of a supplemental complaint. The amendment of the original complaint appears to have consisted in striking therefrom certain of its averments, and these are designated in the order striking them out by reference to the words at which the elimination was to begin and end, together with the numbers of the lines and pages of the complaint in and on which those words appeared. No difficulty could, therefore, have been experienced by counsel in apprehending what portions of the complaint were so eliminated and thus the particulars in which the pleading was amended. By the aid of the amended complaint as reproduced in respondent's brief, the verity of which is not controverted by the defendants, we have had no trouble in finding the precise averments which were stricken out and, therefore, no difficulty in considering that pleading as amended.

7. The plaintiff testified that, upon securing the option to purchase the real property, he paid the owner of said property the sum of one hundred dollars as a consideration for the option, said sum, however, to be credited on the purchase price in case of a sale. Counsel for the defendant attempted to show, on his cross-examination, that the plaintiff loaned said one hundred dollars to Shoo, and asked him this question: "Well, if you testified at the former trial that you loaned him the money, were you correct at that time, or were you not?" The witness, evidently misapprehending the purport of the question, replied: "I don't remember whether I was corrected." A question of like import was again put to the witness, when the court interrupted, saying: "I think that is a matter of inference. I don't think it is worth while to spend any time on it. Proceed with your question." Counsel then asked: "Can you say whether you did make that statement or not?" The court again interrupted counsel as follows: "Mr. Carter, I have ruled on that. Take an exception, if you want to, but go on."

We think the proposed cross-examination involved a legitimate subject of inquiry. The witness had given testimony upon that subject which warranted no other inference than that he, as a partner, had paid the owner of the property the one hundred dollars as a consideration for the option awarded to him and Shoo to purchase the real property, and it would have been strictly proper for the defendant to have shown, if he could, as tending in some measure to negative the claim of partnership in the transaction by the plaintiff, that it was not a payment by the latter on the option or the purchase price of the land but merely a loan of that sum to Shoo. Therefore, the defendant was entitled, by the cross-examination of the plaintiff, either to secure from the latter an admission that he had previously declared that he had merely loaned the defendant the one hundred dollars, or, in case the plaintiff denied having made such statement, to lay the foundation for his impeachment upon that matter. But it cannot be held that the action of the court in disallowing the cross-examination was, under the circumstances, prejudicial, since the questions called for impeaching testimony and for that purpose were not, as is plainly manifest, in the proper form. Where it is sought to impeach a witness by

showing that he had previously made statements at variance in material respects with his "present testimony," such "statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements," or, "if the statements be in writing, they must be shown to the witness before any question is put to him concerning them." (Code Civ. Proc., sec. 2052.) If in this case, the testimony of the witness at the former trial, where, it was claimed, he stated that he had simply loaned the one hundred dollars to Shoo, was taken down and transcribed by a stenographer, he was entitled to have that portion of such testimony which related to that subject shown to him before he could be required to answer the questions relative thereto, or, if the testimony was not so taken and transcribed, then counsel was not entitled to replies to his questions until he related to the witness the circumstances under which the alleged inconsistent statement was made. Counsel pursued neither course, and, therefore, as stated, his exceptions to the rulings of the court disallowing answers to the questions referred to can be of no avail to the defendant here.

There are some other rulings on the evidence of which complaint is made. As to these rulings, the objection is that the court thus improperly curtailed the cross-examination of the plaintiff. We perceive no necessity for a special review of the rulings here referred to. It will be sufficient to say concerning them that the testimony sought to be elicited by some of the questions so propounded had been previously brought out, while others called for the opinions or conclusions of the witness and for testimony as to matters not within the issues.

8. There is no merit in the claim that the court committed prejudicial error in adopting the report of the referee, appointed by it to take testimony in the matter of the accounting of the partnership assets, etc. The ground of the complaint on this score is that the referee omitted to notify the defendants or their counsel of the times and places at which such testimony was to be taken. One of the attorneys for the defendants filed an affidavit in which he deposed that no such notice was given, but this was rebutted by the statement of the referee in his report that he did so notify the parties

on both sides. It, moreover, appears that, notwithstanding that counsel for the defendants were notified, on the sixth day of September, 1910, that, on the third day of the same month, the referee had filed his report in the office of the county clerk, and that the court did not render its ·final decision, embracing the report of the referee, until the fifteenth day of said month, no objection was interposed or filed by the defendants to said report. It is very clear that the time for the defendants to have raised any objection to the report of the referee was before the court approved and adopted the findings of that officer into its own findings. We doubt not that if it had been shown to the court that neither the defendants nor their counsel were served with notice of the time and place of the hearings before the referee and no deliberate or unreasonable negligence on their part had been made to appear concerning such hearings, they would have been allowed an opportunity to have corrected such errors, if any, as might have found their way into the findings of the referee. But, as stated, counsel made no objection to said report, and we must, therefore, assume that no ground existed for objection thereto.

But whether it be true or not, in point of fact, that counsel received no notice of the times and places at which testimony was to be taken by the referee, it cannot be contended that they did not know of the appointment of the referee for the purpose of investigating the accounts and assets of the partnership. Indeed, they were in court when the order appointing the referee was made and the directions as to his duties given, and thus they received actual notice that certain testimony essential to the final decision of the case would be taken at some time by such referee. We do not hold that in such case the parties should not be given notice by the referee of the time and place fixed for his hearings, although' there is no special provision in our code requiring such notice to be given, yet, under the circumstances shown here it is clear that, if it be true that they were given no notice, counsel for the defendants had sufficient warning from their actual knowledge of the appointment of a referee for the purpose stated to put them on their guard so that, by the exercise of a little diligence, they could have ascertained the time and place at which testimony was to be taken by the referee.

9. Counsel asseverate that the great weight or preponderance of the evidence is in favor of the defendants. We cannot examine the evidence here in detail, nor is it considered necessary to do so. It is conceived to be enough to say that the plaintiff's own testimony, which is corroborated by a number of strong circumstances to which other witnesses testified, amply supports the findings of the trial court. It is true that the testimony adduced on behalf of the defendants squarely contradicts in all material particulars the plaintiff's proofs, and would undoubtedly have sustained a decision in their favor; but the result of the wide variance between the testimony produced in support of the respective positions of the parties is only to create a substantial conflict in the evidence, and, therefore, upon the question of the weight or preponderance of the evidence we must submit to the decision of the trial court.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 27, 1912, and the following opinion then rendered thereon:

HART, J.—Counsel for defendants, in their petition for a rehearing of this cause, make these points: 1. That this court erroneously upheld the ruling of the trial court in refusing to allow the defendants, on the cross-examination of the plaintiff, to go into the question whether the latter, on a previous occasion, had stated that he loaned the one hundred dollars to Shoo at the time the contract of option was made; 2. That the ruling by the trial court sustaining the plaintiff's objection to the question asked of defendant Shoo: "Mr. Shoo, you were asked about the arrangement with Mr. Doudell, and you testified that he was to have one hundred dollars a month. How much has been paid?" to which ruling we did not specially refer in our original opinion, was erroneous and prejudicial; 3. That the trial court erred in its ruling (to which we did not particularly refer in the former opinion) disallowing the defendant, Shoo, upon being recalled and interrogated with respect to what occurred and

what was said in the conversations between him and Doudell at the time of the exclusion of the latter from further participation in the partnership business, to answer the question: "What part did, and what didn't?" 4. That this court erred in sustaining the action of the court below in adopting the report or the findings of the referee, it having been made to appear, so it is claimed, that neither the defendant nor their counsel received notice of the times and places of the hearings conducted by that officer of the court; 5. That "the part of the judgment of the trial court which adjudges that said partnership should exist, at least until said real property should have been paid for, should be reversed, or at least directed to be modified, for the reason that there is no allegation in the amended and supplemental complaint upon which such a finding could be predicated, and the same is wholly outside, and beyond, and not responsive to, any issue made by the pleadings."

1. It may be conceded that the cases cited by counsel appear to sustain the defendants' contention that a witness may properly be required to answer questions tending to show that he had made other statements inconsistent with "his present testimony" without first calling his attention to the "circumstances of times, places and persons present" under which such alleged statements were made. Section 2052 of the Code of Civil Procedure, it is true, merely provides that, before such witness can be *impeached* by showing that he had previously made inconsistent statements, such circumstances must first be related to him, and while the opinion has prevailed to some extent that that rule was intended as well for the benefit of the witness as for the purpose of laying the ground for impeachment—that is to say, that it required that the witness be put in possession of all the circumstances under which he made the alleged inconsistent statement, so that, his memory being thus refreshed as fully as it could be, he could answer the question honestly and, if necessary, explain such statement—still, as counsel contend, the later expressions of the supreme court upon that proposition appear to coincide with their views as expressed in the petition. But we find, upon further examination of the record, that there is another answer to the criticism of counsel of the ruling under

consideration, viz.: That the witness, previously to the ruling complained of, had answered the question as satisfactorily as he appeared to be able to. At folio 378 of the transcript, the following question was propounded to Doudell by the attorney for the defendants and the following answer returned: "Q. You testified other times that you were on the stand that you loaned him (Shoo) a hundred dollars? A. I do not remember; *I might have said I loaned it to him.* I gave it to him, however." Thus the witness answered that it was possible that he said at the former time referred to that he *loaned* the money to Shoo, and we can see no reason why he should have been required to repeat an answer to the very same question subsequently propounded to him. Nothing more was done or said to refresh his memory concerning the matter about which he was interrogated when the question was asked the second time than was done or said when it was asked the first time, and it is to be assumed that he would have returned an answer similar to that given the first time the question was asked if he had been asked the same question a dozen or more times under the same circumstances. In any event, where a question is asked and answered in a manner which, as here, indicates that no different answer could probably be given to the same question, the trial court is not bound to have its time consumed by having such question uselessly repeated. In view of the uncertainty of the witness as to whether he had previously said that he had loaned the money to Shoo, we can see no reason why counsel, had they wished to pursue that course, could not have shown, by way of impeachment or rebuttal, precisely what the witness did say respecting that matter (*People* v. *Mar Gin Suie,* 11 Cal. App. 42, 55, [103 Pac. 951]; *Ehat* v. *Scheidt,* 17 Cal. App. 430, 436, [120 Pac. 49]; Greenleaf on Evidence, 16th ed., sec. 462), but counsel did not appear to be disposed to thus clear up the matter. In no view of the proposition are we able to perceive anything in the action of the trial court in the matter of the ruling here complained of to justify a reversal.

2. The question: "Mr. Shoo, you were asked about the arrangements with Mr. Doudell, and you testified that he was to have one hundred dollars a month, How much has he been paid?" called for testimony which had previously been

brought out through the defendant Shoo. At folio 838 of the transcript it will be seen that Shoo was permitted to go into a full explanation of his understanding of the arrangement between himself and the plaintiff and among other things declared that the latter was merely an employee of Shoo and was to receive as compensation the sum of one hundred dollars per month and expenses. "He had at least taken a hundred dollars a month out of that," continued Shoo. "We were both satisfied to leave it in that vague way, and it was left that way." Thus it clearly appears that Shoo testified, in effect, that Doudell received one hundred dollars per month for every month he was actively connected with the business, and the aggregate amount so paid to him, which was all that the interdicted question could have revealed, was easily and readily ascertainable by arithmetical calculation. The ruling was not prejudicial, even if erroneous.

3. The third ground upon which a rehearing is asked involves the ruling of the court refusing to allow the defendant, Shoo, to answer the question, propounded by his attorney, "What part did, and what part didn't?" Shoo had just testified that "some of the matters that Doudell has testified to concerning himself and me occurred and some didn't," whereupon the above stated question was asked. No answer was made to the question, the court having immediately interrupted before an answer was essayed with, "No further questions," to which counsel for the defendants replied, "Well, if the court please, I don't like to leave things in that indefinite way." The court responded: "Well, I have left it that way now. I have given this case all the time I will give it. I have given it a great deal of time."

While it is, of course, the duty of the trial courts, as it is that of all courts, to give to all the cases tried or heard before them all the time they require or that may be necessary to a just and proper decision of all the important questions involved therein, and that the mere fact that a court might in its judgment have given sufficient of its time to a particular case is no excuse or justification for an erroneous ruling, or for refusing to hear further testimony where it is proper in a legal aspect and is designed to illuminate one or all the disputed questions of fact, still we know of no rule of evidence which requires a trial court to allow a large amount of testi-

mony involving, perhaps, various specific topics, to be given in response to an omnibus question such as the one above quoted and as put to the witness Shoo. Doudell had minutely related all the conversations and acts which had occurred between him and Shoo from the time of the commencement of their difficulties or from the time the differences leading to this litigation arose between them. Some of those occurrences Shoo said had occurred and others had not, and if counsel desired to have their client specify or point out in Doudell's testimony those which had occurred and those which did not occur, then they should have questioned him particularly about the several matters to which Doudell had testified, and not have left it entirely to the witness to recall all of the latter's testimony and himself thus point out and separate the correct and the incorrect statements. In other words, counsel should have taken up the alleged incorrect statements of Doudell, separately, if they related to different acts or matters, and have called the attention of Shoo thereto, and have asked him whether they were or were not correct. Besides, it will be seen, by reference to folios 1115 et seq. of the transcript, that Shoo went fully into all the matters pertaining to the differences between the parties, and at folios 1118-1120, it will be observed that he stated several times that "that is all that occurred." Under these circumstances, we cannot see how the defendants could have been damaged in the least by the court's ruling, even if we felt required to hold it to have been erroneous.

4. As to the objection that the trial court committed error by adopting the report of the referee because neither the defendants nor their counsel were notified of the times and places for conducting the hearings of that officer, it is to be said: 1. That we did not say nor intend to say in the former opinion that the failure of the defendants to object to the report of the referee before the decision was filed had the effect of depriving the defendants of the right to interpose objections to said report after the findings were filed. Of course, they had the right to object to said report as part of the findings of the court, just as they had and have the right to object to any of the other findings. But what we intended to say was that, if neither counsel nor the defendants were given notice of the hearings, they should have

called the court's attention to that fact before the findings
were made and filed, they having been given ample notice of
the filing of the report to have done so, and that the court
(although no procedure of this sort is expressly authorized),
in the exercise of its discretion, and in the interest of justice,
would have doubtless caused the referee to proceed *de novo* in
the matter of his investigations so that the parties could have
all been present thereat, if they so desired. As stated in the
former opinion, the defendants did not elect to take that
course. 2. Upon this point the record discloses this situa-
tion: That after the findings were filed, the attorneys for the
defendants made a motion to vacate the findings and the
report of the referee upon the ground upon which they here
urge error in the adoption by the trial court of said report.
This motion was supported by affidavits. The bill of excep-
tions not only shows that the report of the referee was made
up almost entirely from the books and papers of the firm,
most of which had already been introduced in evidence, and
which had been turned over to the referee by the clerk of
the court, but also contains an affidavit by the attorney for
the plaintiff in which it is alleged that affiant, on the eighth
day of June, 1910, informed Messrs. Carter & Carter, the
attorneys for the defendants, that the referee was proceeding
with the taking of an account as required by the court; that
frequently thereafter affiant requested Stanton L. Carter, the
senior member of the firm of Carter & Carter, attorneys for
the defendants, to join with affiant in assisting the referee to
make up his account as speedily as possible, "and, in particu-
lar, on the ninth day of July, 1910, in open court and in the
presence of the Hon. Geo. E. Church, before which this
action was pending, stated to said Stanton L. Carter that
said referee was engaged in making up said report and then
and there requested said Stanton L. Carter to join affiant
in helping said referee to complete his report as speedily as
possible, to which said Stanton L. Carter replied that he
would see about it or words to that effect." It is further
alleged in said affidavit that, after the exclusion of plaintiff
from the business carried on by him and Shoo, one L. C. Shin-
gle was placed in charge and possession of said business to
represent Shoo, and thereafter conducted said business; "that
the defendant, Shoo, has not been in the city of Coalinga

since the fifteenth day of April, 1910, and has left the entire charge of said business to said L. C. Shingle, and that said Shoo has known nothing with reference to any of the matters which the referee was required, by said order of June 6th, 1910, to report to this court; that said Shingle alone was familiar with all the details of said business and premises from and after the eighth day of February, 1910.'' This affidavit further alleges that it was not necessary to take any testimony or examine any witnesses other than the plaintiff and said Shingle to enable said referee to make a report as required by the court; that, in addition to the books and papers which were delivered to the referee by the clerk of the court, said Shingle ''turned over all the remaining books of account, vouchers, and papers and whatever else was necessary to or proper to enable said referee to make a report in accordance with the aforesaid order of June 6th, 1910''; that said books of account, vouchers, bills, papers, etc., turned over to said referee, were sufficient to enable him, with the assistance of said Shingle and the plaintiff, to make a complete report required by the order of the court, and that from time to time, whenever required by the referee, both the plaintiff and said Shingle appeared before him for the purpose of making such explanations as were required by him with respect to the matters which he was to report to the court; ''that the character of the report did not necessitate such a trial as required the testimony of other witnesses.''

The statements contained in the foregoing affidavit are not controverted by counsel for the defendants or the defendants themselves. And upon that showing alone the court below was justified in refusing to set aside the findings upon the ground here urged against the report of the referee.

Counsel, however, declare in their petition that the court below found as a fact that ''none of the attorneys for said defendants had any notice or knowledge of the taking of any testimony by said referee, or of any hearing before said referee, or of any action taken by the court thereon, and the records of said court do not show that any such notice of any said proceedings was given.'' Counsel are obviously in error in said statement. The language just quoted and which is also quoted in the petition as purporting to be an excerpt from the court's findings constitutes a part of the language

of the bill of exceptions on the motion to set aside the find-
ings, and said language in said bill is immediately preceded
by the language: "Said motion was supported by affidavits
showing that," thus clearly indicating it to be merely the
statement by the attorneys preparing the said bill of excep-
tions and not a finding of the court. This is so plainly the
fact that we are at a loss to understand how counsel came to
treat said language as a finding or as emanating from the
court in any form or for any purpose. As a matter of fact,
by adopting the report of the referee into its findings, the
court found that "both plaintiff and defendant *were advised
as to the accounting,* but very little information could be
obtained from either party and the referee was obliged to
rely on the books, papers and records as aforesaid."

Our conclusion upon the point under consideration is that
if the defendant, Shoo, or his attorneys were not present when
the referee was conducting his investigations it was entirely
due to their own negligence. They, therefore, now have no
ground upon which to found a just complaint against the
judgment of the court because of their alleged absence from
said hearings or investigations, and this would still be true
even if it could well be maintained that their rights would
have been more circumspectly conserved by the presence of
Shoo himself or his attorneys than they were by his represen-
tative, Shingle, who, at the time the referee was investigating
the accounts, and for some time prior to the appointment
of said referee, had charge of the business, books of account,
and papers concerning which the referee was required to
report to the court, and who had actual knowledge of the
investigations of the referee as they were being prosecuted.

5. The fifth and last point urged in the petition is that the
court erred in finding "that said partnership should exist at
least until said real property should have been paid for,"
the argument being that said finding is not within the issues
made by the pleadings. It is true that the allegation in the
complaint as to the time during which the alleged partnership
was to exist was stricken out and that no language of like
import is contained in the complaint upon which the trial was
had. But, in our opinion, the finding is immaterial. As
shown in the original opinion, where a contract of copartner-
ship has been executed—that is to say, when the parties

thereto have actually entered upon the execution of such contract—the partnership will exist and remain such until "something is done to dissolve it." (*Sanger* v. *French*, 157 N. Y. 213, [51 N. E. 979].) The principal point in issue in this case was whether there was a copartnership agreement at all, and, if there was, and the partners had entered upon the execution of the terms of said agreement, it seems to us to be of no material importance in this case whether such partnership was to continue for a specified or limited time or indefinitely. Moreover, we are not altogether satisfied with the position which the appellants necessarily assume that, upon an issue whether two or more parties are copartners, engaged in carrying on a partnership business, it is absolutely necessary to allege the period of time during which such copartnership is by the agreement to subsist in order to justify the court in making a finding as to such time, if there is evidence justifying it. However, as stated, we do not think the finding referred to is of any special importance in this case one way or the other.

We have now, as counsel in their petition requested us to do, specially noticed all the points made on this application, and, while the record is amenable to some criticism (and what record made up in the trial of a case is not?), it is evident that we have not thus been convinced that the judgment or order should be disturbed.

The petition for a rehearing is denied.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 24, 1913.